FILED

Frank J. Johnson (SBN 174882)
Shawn E. Fields (SBN 255267)
JOHNSON & WEAVER, LLP
110 West "A" Street, Suite 750
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856

2013 JUN 26  AM 10: 48

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

*Attorneys for Plaintiff Munjal Mehta*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUNJAL MEHTA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>POWER-ONE, INC., RICHARD J. THOMPSON, JON GACEK, KAMBIZ HOOSHMAND, HARTMUT LIEBEL, MARK MELLIAR-SMITH, KYLE RYLAND, AJAY SHAH, RICHARD M. SWANSON, JAY WALTERS, and VERDI ACQUISITION CORPORATION,<br><br>Defendants. | Case No.: CV13-04631—GW (CWx)<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND BREACH OF FIDUCIARY DUTY<br><br><br>JURY TRIAL DEMANDED |

FILED BY FAX

CLASS ACTION COMPLAINT

Plaintiff Munjal Mehta ("Plaintiff"), a shareholder of Power-One, Inc. ("Power-One" or the "Company"), by his undersigned attorneys, brings this class action individually and on behalf of all others similarly situated against the directors and certain affiliated entities of the Company for violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and for breaching, or aiding and abetting breaches of, fiduciary duties under state law. Specifically, Plaintiff brings claims against Defendants Richard J. Thompson ("Thompson"), Jon Gacek ("Gacek"), Kambiz Hooshmand ("Hooshmand"), Hartmut Liebel ("Liebel"), Mark Melliar-Smith ("Melliar-Smith"), Kyle Ryland ("Ryland"), Ajay Shah ("Shah"), Richard M. Swanson ("Swanson") and Jay Walters ("Walters") (collectively referred to herein as the "Individual Defendants"), all of whom are members of the Company's Board of Directors (the "Board"), Power-One, and Verdi Acquisition Corporation ("Verdi Acquisition"), a wholly-owned subsidiary of ABB Ltd. ("ABB"). Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon information and belief derived from the investigation of counsel, which includes, without limitation: a) review and analysis of public filings made by Power-One and other related parties and non-parties with the U.S. Securities and Exchange Commission ("SEC"); b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; c) review of news articles, shareholder communications, and postings on Power-One's website concerning the Company's public statements; and d) review of other publicly available information concerning Power-One, the Individual Defendants, Verdi Acquisition and ABB.

## I. INTRODUCTION

1. On June 20, 2013, the Individual Defendants caused the Company to issue and disseminate a false and misleading proxy statement (the "Proxy") to

shareholders hoping to obtain enough shareholder votes to approve an unfair and grossly inadequate acquisition of Power-One by ABB (the "Proposed Acquisition").  This action arises out of the attempts by the directors of Power-One to leverage their positions with and control over the Company to secure personal financial windfalls to the detriment of the Company's shareholders.

2.      Power-One is a manufacturer and provider of power supply products for a variety of industries, with a focus on renewable energy systems and energy-efficient power conversion.  Power-One's products include photovoltaic ("PV") inverters used to gather and distribute energy from solar and wind farms.  The Company serves the global PV market, and has expanded its presence to include North America, India, Australia, Latin America, Japan, China, the Middle East and Africa.

3.      Power-One has been profitable in recent years and has been debt-free since 2011.

4.      On April 22, 2013, Power-One and ABB jointly announced that the Board had agreed to a transaction (the "Acquisition Agreement") in which ABB, through its wholly owned subsidiary Verdi Acquisition, will acquire Power-One for $6.35 per share in cash or $1.028 million equity value.

5.      The Board entered into the Acquisition Agreement during a time that Power-One's stock price is undervalued due to difficult current market conditions, therefore the consideration being offered to Power-One's public stockholders is unfair and grossly inadequate because the true value of Power-One's stock, given the Company's recent financial performance and prospects for future growth and earnings, is materially in excess of the amount being offered.

6.      However, Defendant Thompson and other Company officers will receive substantial payouts through the Proposed Acquisition through cash

severance benefits, and other Individual Defendants will receive substantial payments for options and equity awards, to the detriment of shareholders.

7. Further, to ensure the success of the Proposed Acquisition, the Individual Defendants breached their fiduciary duties by agreeing to deal protection devices in the Acquisition Agreement that unreasonably deter competing bids and prevent the Company's stockholders from obtaining the best possible price for their shares. These deal protection provisions further the interests of ABB and certain of the Individual Defendants to the detriment of Power-One's stockholders.

8. On May 23, 2013, the Company issued and disseminated a preliminary proxy statement, and on June 20, 2013, the Company issued the Proxy to shareholders, soliciting shareholder votes in favor of the Proposed Acquisition. The Proxy, which was also filed with the SEC, fails to provide stockholders with material information necessary to allow them to make an informed decision.

9. For example, the Proxy omits material information regarding the financial analysis regarding the valuation of the Company, and the process leading to the Acquisition Agreement. The Proxy also fails to disclose details regarding other potentially interested buyers and their proposed bids for the Company. These omissions make other statements in the Proxy materially false and misleading.

10. The Individual Defendants, as directors of Power-One, owe fiduciary duties to the Company and its shareholders. The Individual Defendants have violated applicable laws and breached their fiduciary duties by voting in favor of the Proposed Acquisition and disseminating the false and misleading Proxy, knowing that the terms of the Acquisition Agreement were harmful to the Company and its shareholders, and Verdi Acquisition has aided and abetted such breaches.

3

11.     For these reasons and as set forth in detail below, Plaintiff seeks to enjoin Defendants from consummating the Proposed Acquisition unless and/or until Defendants cure their violations of law and breaches of fiduciary duty, or, in the event the Proposed Acquisition is consummated, to recover damages resulting from Defendants' violations of law and breached of their fiduciary duties.

## II.     JURISDICTION AND VENUE

12.     This Court has jurisdiction over Defendants pursuant to 28 U.S.C. §1331, as Plaintiff's claims arise in part out of the laws of the United States, including §14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, and §20(a) of the Exchange Act.  All of Plaintiff's claims arising under the Exchange Act are within the exclusive jurisdiction of this Court.  In addition, this Court has jurisdiction over Defendants pursuant to 28 U.S.C. §1332, as there is complete diversity between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over all other claims, as the claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13.     This Court has jurisdiction over each Defendant named herein because each Defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the courts of this District permissible under traditional notions of fair play and substantial justice.

14.     Venue is proper in this Court because Power-One is headquartered in Camarillo, California.  Each Individual Defendant has had extensive contacts

with California as a director and/or officer of Power-One or otherwise, which makes the exercise of personal jurisdiction over them proper.

## III.   THE PARTIES

### A.   Plaintiff

15.   Plaintiff Munjal Mehta is an individual shareholder of Power-One. He purchased 1,250 shares of Power-One stock on October 20, 2010 and has continuously held his stock since that date.  He is a citizen of New York.

### B.   Defendant Power-One

16.   Defendant Power-One is a Delaware corporation with its principal place of business at 740 Calle Plano, Camarillo, California.  The Company was originally incorporated in 1973 as a California corporation, re-incorporated in Delaware in 1996, and reorganized in Delaware in 2010 through a merger, with the surviving entity renamed Power-One, Inc.   Power-One is traded on the NASDAQ stock exchange under the symbol "PWER."

### C.   Individual Defendants

17.   Defendant Thompson has been president and Chief Executive Officer ("CEO") of Power-One since February 2008.  Thompson has also been a director of Power-One since August 2007.  Thompson is a citizen of Florida.

18.   Defendant Gacek has been a director of Power-One since November 2008.  Gacek is a citizen of Washington.

19.   Defendant Hooshmand has been a director of Power-One since October 2009.  Hooshmand is a citizen of California.

20.   Defendant Liebel has been a director of Power-One since July 2012. Liebel is a citizen of Florida.

21.   Defendant Melliar-Smith has been a director of Power-One since 2001.  Melliar-Smith is a citizen of England.

22.   Defendant Ryland has been a director of Power-One since May 2009.  Ryland is a citizen of California.

CLASS ACTION COMPLAINT

23.     Defendant Shah has been a director of Power-One since May 2009. Shah is a citizen of Michigan.

24.     Defendant Swanson has been a director of Power-One since October 2010.  Swanson is a citizen of California.

25.     Defendant Walters has been a director of Power-One since 1999, and Chairman of the Board since June 2007.  Walters is a citizen of Alabama.

26.     Defendants Thompson, Gacek, Hooshmand, Liebel, Melliar-Smith, Ryland, Shah, Swanson, and Walters are collectively referred to herein as the "Individual Defendants."

**D.     Defendant Verdi Acquisition**

27.     Defendant Verdi Acquisition is a Delaware corporation and wholly owned subsidiary of ABB, formed solely for the purpose of entering into the Acquisition Agreement and effectuating the Proposed Acquisition.

**E.     Related Parties**

28.     ABB is a corporation organized under the laws of Switzerland. ABB maintains its principal executive offices in Switzerland.  ABB and its affiliates operate in approximately 100 countries and employ about 145,000 people.  ABB is traded on the New York Stock Exchange under the symbol "ABB."

29.     Silver Lake Sumeru is a private technology investment firm.  As of April 21, 2013, Silver Lake Sumeru beneficially owned approximately 33.7% of Power-One's common stock, making it the largest stockholder of Power-One. Defendant Shah is the Founding Managing Partner of Silver Lake Sumeru, Defendant Ryland is the Managing Director, and Defendant Hooshmand is a Senior Advisor.

CLASS ACTION COMPLAINT

**IV.   SUBSTANTIVE ALLEGATIONS**

   **A.   Background of Power-One**

   30.   Power-One designs, manufactures, and sells power supply products globally, with a focus on renewable energy systems and energy-efficient power conversion.

   31.   In 2007, Power-One entered the commercial solar market and introduced industry-leading PV inverters providing up to 97% conversion efficiencies.  In the years since, the Company has launched a steady stream of innovative products, and by 2010 had become the world's second largest designer and manufacturer of PV inverters.  In March 2013, the Company announced that it had surpassed the one million mark for PV inverters sold worldwide.

   32.   The majority of Power-One's revenues have been generated in Europe, predominantly in Italy and Germany, and the difficult business environment in the last few years led to decreases in revenue.  The Company responded by expanding further into Asia and North America.

   33.   Power-One has been profitable since 2010, and since 2011 has been free of long term debt.  As of December 30, 2012, Power-One had cash and short term investments of $266 million, as compared with $205 million at January 1, 2012.

   34.   On January 31, 2013, the Company filed Form 10-K with the SEC and reported the Company's financial results for the fourth quarter and full year 2012.  In the press release announcing the results, Defendant Thompson reported that although weakness in demand in Europe reduced the Company's sales for the quarter:

   Despite the difficult current market conditions, our new products
   continued to be well received in the marketplace as our TRIO family
   of string inverters posted record sales for the year and our liquid-
   cooled ULTRA series of central inverters began shipping

1  commercially in Europe in the fourth quarter and is expected to ship

2  in the U.S. in the first quarter.

3

4  The worldwide PV market is expected to grow by approximately 7%

5  in 2013, largely driven by growth in North America and Asia-Pacific.

6  We will benefit from this growth through our investment in these key

7  markets and the introduction of industry-leading new product

8  offerings.

9  35.   On May 2, 2013, the Company filed Form 10-K with the SEC and

10  reported the Company's financial results for the first quarter of 2013.   In the

11  press release announcing the results, Defendant Thompson reported strong

12  results and increased sales:

13  In the first quarter of 2013, Power-One was able to exceed its revenue

14  guidance forecast as a result of higher demand for commercial

15  inverters in Europe.  We experienced a sequential increase in inverter

16  revenue in most of our major markets in Europe, with particular

17  strength in Italy, the U.K. and France.

18

19  In addition to the upturn in demand in Europe, our new liquid-cooled

20  ULTRA central inverters are being well received in North America.

21  While revenue from ULTRA in North America for the first quarter

22  was modest, bookings were strong, giving us confidence that we are

23  beginning to gain traction on this important new product.

24  36.   As of March 31, 2013, Power-One had cash and short term

25  investments of $290 million.

26

27

28

CLASS ACTION COMPLAINT

**B.     Background to the Proposed Acquisition - Silver Lake Sumeru Investment in the Company**

37.     On April 23, 2009, the Company announced a "significant, privately issued minority investment" from Silver Lake Sumeru of $60 million, consisting of preferred stock, senior convertible notes, and warrants for Power-One common stock.

38.     Under the preferred stock provisions, Silver Lake Sumeru was granted the right to appoint two people to the Board, and the right to nominate one independent candidate to stand for election to the Board beginning in 2010. On May 8, 2009, the Board increased in size from seven to nine directors, and Defendants Ryland and Shah, both managers at Silver Lake Sumeru, were appointed as directors of Power-One.

39.     As the Company's stock price rose, Silver Lake Sumeru sought to cash out on its investment in Power-One.   According to the Proxy, in approximately June 2011, Defendant Thompson and Silver Lake Sumeru received several inquiries regarding a potential combination with the Company, including an inquiry from ABB.  On June 23, 2011, exploratory discussions took place between ABB and Silver Lake Sumeru.

40.     On November 23, 2011, the Company redeemed the convertible preferred stock held by Silver Lake Sumeru and converted it into 17.5 million shares of Power-One common stock, making Silver Lake Sumeru the Company's largest stockholder, holding more than twice the shares of any other stockholder.

**C.     The Proposed Acquisition**

41.     On July 26, 2011, the Board met and approved the retention of Goldman Sachs & Co. ("Goldman Sachs") as its financial advisor.  According to the Proxy, at this meeting, the Board "determined to focus on pursuing a potential transaction with ABB and several other strategic buyers."

42.     Defendants Thompson, Walters and Ryland were appointed to serve on a special committee created at this meeting (the "2011 Committee") to advise and make recommendations to the Board with respect to a potential business combination.

43.     On August 24, 2011, a meeting took place in New York City, New York among senior executive officers from ABB, Defendant Thompson, other officers of the Company, representatives from Goldman Sachs and ABB's financial advisor.  Prior to such meeting, the Company and an ABB affiliate executed a nondisclosure and standstill agreement dated as of August 23, 2011.

44.     Also in the second half of 2011, the Company entered into non-disclosure and standstill agreements with several additional potentially interested parties.  The Proxy states that each of the potentially interested parties had expressed an interest in a potential transaction with Power-One, in some cases after being contacted by Goldman Sachs.  The Company met with and made management presentations to two of the potentially interested parties.  However, none of these meetings resulted in advanced discussions with any party.

45.     On September 13, 2011, ABB submitted a preliminary, non-binding offer to purchase Power-One, indicating that ABB valued Power-One common stock in the range of $11 to $13 per share, which representatives of Goldman Sachs communicated to Power-One.

46.     In September 2011, Power-One's stock price fell by approximately 34% from a closing price of $6.76 on September 13, 2011 to a closing price of $4.50 on September 30, 2011.  The Proxy states that "[t]he movement in Power-One's stock coincided with negative developments in the solar renewable energy sector, including the September 2011 Solyndra bankruptcy and changes in the industries and markets in which the Company operates."  During September 2011, ABB's financial advisor contacted Goldman Sachs to notify the Company

that ABB "was no longer interested in pursuing an acquisition of the Company for the foreseeable future."

47.     On October 4, 2011, the Board "(i) determined that it was in the best interests of the Power-One stockholders and the Company to terminate discussions regarding a potential business combination, and (ii) adopted resolutions to formally dissolve the 2011 Committee."

48.     Power-One discontinued discussions with potential buyers following the Board meeting in October 2011, but discussed potential business combinations at the Board meetings in June and August 2012.

49.     On September 8, 2012, at a special meeting of the Board, the Board formed a steering committee of Defendants Thompson, Shah, Ryland, Melliar-Smith, and Liebel (the "2012 Committee").  The 2012 Committee included two members who are officers of Silver Lake Sumeru, Defendants Ryland and Shah.

50.     According to the Proxy, "[f]rom mid-September to mid-October of 2012, representatives of Goldman Sachs contacted each of the potential strategic partners authorized by the Power-One board of directors on a confidential basis. None (other than ABB) expressed interest in receiving non-public information about the company or pursuing a transaction."

51.     On February 13, 2013, Ulrich Spiesshofer of ABB contacted Defendant Thompson to indicate that ABB was willing to explore a transaction with Power-One at an offer price in the range of $5.50 to $6.50 per share.  On March 7, 2013, Dr. Spiesshofer notified Defendant Thompson of an increased offer of $6.75 per share, and "ABB's representative also indicated that ABB would only be prepared to proceed with discussions with Power-One on an exclusive basis."

52.     The Proxy states that Defendant Thompson "proposed that the definitive merger agreement the parties would ultimately enter into contain a 'go shop' provision, permitting Power-One to seek out competing offers even after it

entered into a definitive agreement with ABB.  Dr. Spiesshofer rejected this request, explaining that ABB would not proceed with the transaction if such a provision were required."

53.    On March 9, 2013, ABB submitted to Power-One a non-binding offer letter at a price of $6.75 per share, to be paid in cash, and a proposed binding exclusivity agreement providing for an eight-week exclusivity period for ABB to complete its due diligence and negotiate a definitive agreement to acquire Power-One.

54.    On March 11, 2013, the Board met to discuss ABB's revised indicative offer.  Representatives of Goldman Sachs noted that ABB's financial advisor "had stated that ABB's proposed price of $6.75 per share was the highest price that ABB would be willing to pay, and that it was a non-binding offer subject to the completion of ABB's due diligence efforts, which could result in a decreased proposed price per share, and negotiation of definitive documentation."

55.    The Proxy states that although the Board discussed the possible merits of a "go shop" provision, the Board "determined that failing to pursue ABB's offer, which represented a significant premium over the Company's then-current common stock price, could result in the loss of the opportunity to provide stockholders with value not otherwise expected to be realized in the foreseeable future," and agreed to ABB's offer and an exclusivity agreement of up to six weeks.

56.    During this time, the Company also received inquiries from other potential buyers.  The Proxy states that although Defendant Thompson discussed the inquiries with the Board, he noted "that they were not viewed as serious offers by Power-One management."

57.    In early April 2012, ABB notified the Company that based on its due diligence, it would be lowering its offer price.  On April 12, 2013, Dr.

1  Spiesshofer called Defendant Thompson and indicated that ABB's "best and
2  final" offer was $6.35 per share.

3      58.    The Board met to discuss the offer and, according to the Proxy,
4  "determined that the possibility of consummating a transaction at $6.35 per share
5  on acceptable contractual terms would maximize stockholder value and that the
6  Company should continue to pursue the transaction, seeking as favorable a
7  contract as possible under the circumstances."   On April 20, 2013, the Board
8  unanimously approved the Proposed Acquisition.

9      59.    On April 22, 2013, Power-One and ABB jointly announced that the
10  Board had agreed to a transaction (the "Acquisition Agreement") in which ABB,
11  through its wholly owned subsidiary Verdi Acquisition, will acquire Power-One
12  for $6.35 per share in cash or $1.028 million equity value.

13      60.    As detailed above, the Board approved the "best and final" offer
14  from ABB, which was approximately half the price ABB had offered only a few
15  months previously.  Instead of seeking a fair price for the Company's assets, the
16  Individual Defendants were willing to take an unfair offer so that they could
17  benefit themselves by immediately cashing out at a discount, instead of seeking
18  the true value of Power-One's shares.

19      61.    The share price also compares unfavorably to similar transactions.
20  As reported by *Bloomberg* on April 22, 2013, "[t]he 7.7 times EBITDA [earnings
21  before interest, taxes, depreciation and amortization] that ABB is paying for
22  Power-One is lower than the median multiple of 8.5 paid for alternate energy
23  companies in the last three years, according to data compiled by Bloomberg."

24      62.    The Proposed Acquisition benefits Silver Lake Sumeru, the
25  Company's largest shareholder, to the detriment of the other shareholders.
26  Under the Acquisition Agreement, the warrants held by Silver Lake Sumeru,
27  with an exercise price of $1.33 per warrant, will be exchanged at the share price
28  of $6.35, representing an immediate profit of over $43 million for Silver Lake

13
CLASS ACTION COMPLAINT

Sumeru. Additionally, each of the 36,375 Series C Preferred Shares held by Silver Lake Sumeru will be exchanged for $4,303.70. In total, Silver Lake Sumeru will receive over $325 million under the Proposed Acquisition, a profit of more than $265 million for their investment of $60 million just four years ago.

63. Further, in connection with the Proposed Acquisition, Silver Lake Sumeru entered into a voting agreement (the "Voting Agreement") pursuant to which it has agreed to vote its shares in favor of the Proposed Acquisition and to vote against any other proposal from a third party. The Voting Agreement is designed to further ensure that the Proposed Acquisition is consummated, to the benefit of Silver Lake Sumeru and preventing shareholders from receiving the true value of their shares.

64. The Defendants entered into the Acquisition Agreement during a time that Power-One's stock price is undervalued due to difficult current market conditions, therefore the consideration being offered to Power-One's public stockholders is unfair and grossly inadequate because the true value of Power-One's stock, given the Company's recent financial performance and prospects for future growth and earnings, is materially in excess of the amount being offered.

**D.   Defendants Will Benefit From the Acquisition, to the Detriment of Shareholders**

65. However, Defendant Thompson and other Company officers will receive substantial payouts through the Proposed Acquisition through cash severance benefits, and other Individual Defendants will receive substantial payments for options and equity awards, to the detriment of shareholders.

66. The Proxy notes that certain executives of the Company, including Defendant Thompson, have signed change-in-control agreements with Power-One, which entitle them to cash payments if the Proposed Acquisition is consummated. Defendant Thompson will also receive benefits pursuant to his

employment agreement with the Company.  Defendant Thompson will receive $17.2 million under this "golden parachute," while four other Power-One executives will receive payments totaling over $18.2 million.

67.    Further, Defendants Thompson, Gacek, Hooshmand, Liebel, Melliar-Smith, Swanson, and Walters are also entitled to payments for outstanding options and other equity awards.  Defendant Thompson will receive $12 million in payments for these awards, while the other Individual Defendants will receive awards totaling $580,895.

**E.    Deal Protection Provisions Further Benefit Defendants, to the Detriment of Shareholders**

68.    Further, to ensure the success of the Proposed Acquisition, the Individual Defendants breached their fiduciary duties by agreeing to deal protection devices in the Acquisition Agreement that unreasonably deter competing bids and prevent the Company's stockholders from obtaining the best possible price for their shares.  These deal protection provisions further the interests of ABB and certain of the Individual Defendants to the detriment of Power-One's stockholders.

69.    These deal protection devices, included in Section 6.5 of the Acquisition Agreement, include the following:

(a)    a "no-solicitation" clause which prevents Power-One from soliciting, and prevents its directors and officers from participating in discussions that may lead to, an acquisition proposal from any bidder, including potential buyers who have already submitted alternative proposals;

(b)    a highly restrictive provision that only permits the Board to withdraw its approval of the Proposed Acquisition under very limited circumstances;

15
CLASS ACTION COMPLAINT

(c)     a provision that requires the Company to advise ABB within 24 hours of any proposals or inquiries received from other parties, including the identity of such other party and the terms of the proposal;

(d)     a matching right provision that allows ABB four business days to renegotiate with the Board after notice of any bid from another party;

(e)     a definition of "Superior Proposal" that requires a third party to acquire 90% or more of the assets of the Company or 90% of the issued and outstanding shares of the Company's stock; and

(f)     a termination fee of $20 million, payable by Power-One to ABB if Power-One decides to pursue a competing bid.

**F.     The Individual Defendants Disseminated Materially Misleading Proxy Statements**

70.     In addition to structuring the Proposed Acquisition solely for their own benefit, the Individual Defendants have also caused Power-One to file and disseminate the Proxy that materially misleads shareholders concerning the Proposed Acquisition.  The dissemination of this misleading Proxy is a breach of the Individual Defendants' fiduciary duties owed to Power-One and the Company's shareholders, and also violates §§ 14(a) and 20(a) of the Exchange Act.

71.     On May 23, 2013, the Company issued and disseminated a preliminary proxy to shareholders, soliciting shareholder votes in favor of the Proposed Acquisition.  On June 20, 2013, the Company issued and disseminated the final Proxy, which was also filed with the SEC, announcing that the shareholder vote on the Proposed Acquisition will take place on July 23, 2013. The Proxy fails to provide stockholders with material information necessary to allow them to make an informed decision.

72.     For example, the Proxy omits material information regarding the financial analysis regarding the valuation of the Company, and the process

leading to the Acquisition Agreement. The Proxy also fails to disclose details regarding other potentially interested buyers and their proposed bids for the Company. These omissions make other statements in the Proxy materially false and misleading.

73. The Proxy states, for example, that Defendant Thompson discussed the inquiries from other potential buyers with the Individual Defendants, "noting that they were not viewed as serious offers by Power-One management." The omission of material information disclosing the reasons why such inquiries were purportedly not "serious" does not afford shareholders sufficient information to make an informed decision and, as a result, makes the statement materially false and misleading.

74. The Proxy also states that the Individual Defendants "determined that the possibility of consummating a transaction at $6.35 per share on acceptable contractual terms would maximize stockholder value and that the Company should continue to pursue the transaction, seeking as favorable a contract as possible under the circumstances," but this statement is materially false and misleading because the Proxy omits any analysis of the true value of the Company's shares.

75. The Proxy also fails to disclose the impact of government subsidies in the valuation of the Company and the negotiation of the Proposed Acquisition. The Company's Form 10-K filed with the SEC on February 28, 2013 notes that the solar energy industry relies on "continued dependence on government subsidies," but the Individual Defendants have not included details in the Proxy about the financial impact of these subsidies. This information would be material to investors in deciding whether to vote in favor of the transaction and its omission makes the statements in the Proxy false and misleading.

76. The Proxy Statements were also materially false and misleading because they failed to disclose how the Individual Defendants fulfilled their

fiduciary duties to exercise due diligence and carefully consider any reasonable unsolicited merger or acquisition offer.  In particular, the Proxy Statements fail to disclose how the Individual Defendants could have diligently and in good faith considered offers from other potential buyers, or whether delaying merger discussions until the Company's share price reflected the true value of the Company would be beneficial for the shareholders.  This omission of material information makes the statement in the Proxy that the Individual Defendants considered actions to "maximize stockholder value" materially false and misleading.

## V.   DUTIES OF THE INDIVIDUAL DEFENDANTS

### A.   Fiduciary Duties

77.   Under Delaware law, corporate directors owe fiduciary duties to the companies they serve, which include a duty of loyalty and a duty of care.  The fundamental principle of the corporate law governing Power-One is that that the business and affairs of Power-One are managed by and under the direction of the Board.  In exercising their powers, corporate directors are charged with an unyielding fiduciary duty to protect the interests of the corporation and to act in the best interests of the shareholders.  The members of the Board, all of whom are named defendants in this action, owe Power-One the highest fiduciary duties and are obligated to protect and defend the interests of Power-One.

78.   The duty of care includes a duty by each director of Power-One to inform himself, prior to making a business decision, of all material information available relating to that business decision, and to consider all alternatives.  The more significant the decision, the greater is the requirement to probe and consider alternatives.  In this case, the decisions whether to proceed with the Proposed Acquisition and how to respond to competing bids are indisputably the most fundamental and important decisions to be made on behalf of Power-One and its shareholders.  Both the duty of care and the duty of loyalty warranted

CLASS ACTION COMPLAINT

careful and cautious deliberation of these matters, after substantial analysis and due diligence to determine that the decisions were in the best interests of the shareholders of Power-One.  The Individual Defendants were obligated to review the decision to merge, the Acquisition Agreement, and the value of the acquisition offer before making its final decision.  The directors were obligated to conduct that review in a thorough manner and not rush to a decision that would benefit them to the exclusion of all other Power-One shareholders.

79.   The duty of loyalty is a broad and all-encompassing duty that imposes on corporate directors a special obligation to hold the interests of the corporation above their own interests, and to act exclusively in the best interests of the corporation and its shareholders.  The duty of loyalty embodies both an affirmative duty to protect the interests of the corporation and an obligation to refrain from conduct that would injure the corporation and its shareholders in any way.

**B.    Control, Access, And Authority**

80.   The Individual Defendants, because of their positions of control and authority as directors of Power-One, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

81.   Because of their advisory, executive, managerial, and directorial positions with Power-One, each of the Individual Defendants has access to material, non-public information about Power-One.

82.   At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Power-One, and was at all times acting within the course and scope of such agency.

**C.    Reasonable And Prudent Supervision**

83.   To discharge their duties, the directors of Power-One are required to exercise reasonable and prudent supervision over the management of the

Company.  By virtue of such duties, the officers and directors of Power-One were required to, among other things:

(a)   conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; and

(b)   ensure that Power-One was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

## VI.   BREACHES OF DUTIES

84.   Each Individual Defendant, by virtue of his or her position as a director, owed to Power-One and to its shareholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of Power-One, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors of Power-One, the absence of good faith on their part, and a reckless disregard for their duties to Power-One and its shareholders.

85.   In violation of both the duty of care and the duty of loyalty that the Individual Defendants owed to the Company's shareholders, and with no true consideration of the best interests of Power-One or its shareholders, the Individual Defendants authorized Power-One to agree to a sale of the Company that benefits insiders and fails to provide shareholders with the true value of their shares.

86.   As fiduciaries of Power-One and its shareholders, the members of the Board had a duty to personally assure themselves that Power-One was not wasting hundreds of millions of dollars in a self-serving transaction.  The Individual Defendants failed in that duty.  The Individual Defendants instead chose their own self-interest over the best interests of Power-One's shareholders.

87.    The Individual Defendants in this case likewise abrogated their duty of loyalty to the Company's shareholders.  The decision to go forward with the Proposed Acquisition at all costs and to implement deal protection devices that deter competing bids and prevent the best possible price for Power-One's shareholders was one based entirely on the self-interest of the Individual Defendants to the detriment of the Company's shareholders.

88.    The Individual Defendants put their own interests ahead of those of the Company's shareholders.  Defendant Thompson, who stands to receive substantial payments through the Proposed Acquisition, violated his duties of loyalty to act in the best interests of Power-One's shareholders, by personally profiting from a transaction that is detrimental to Power-One's public shareholders.

89.    Defendants Hooshmand, Ryland, and Shah also violated their duties of loyalty to Power-One's shareholders by voting for and approving the Proposed Acquisition despite their conflicts of interest due to their association with Silver Lake Sumeru.   As such, these Individual Defendants violated their duty of loyalty to Power-One's shareholders.

90.    The Individual Defendants supported and ultimately voted to approve the Proposed Acquisition without engaging in a value-maximizing sales process, and have agreed to deal protection devices that prevent Plaintiff and Power-One's other public shareholders from receiving their fair portion of Power-One's assets.   In committing these acts and failing to fulfill their responsibilities as officers and directors of Power-One, they breached their fiduciary duties to the Company's shareholders.

## VII.   CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

91.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of

conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

92. During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to provide the Individual Defendants with enormous financial gain at the expense of the Company and its shareholders. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

93. The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (a) disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; and (b) disguise and misrepresent the facts and effect of the Proposed Acquisition.

94. The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to enter into an agreement to engage in the Proposed Acquisition. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

95. Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commissions of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## VIII.  CLASS ACTION ALLEGATIONS

96.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Power-One's stock who are being and will be harmed by Defendants' actions described herein (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendants.

97.    This action is properly maintainable as a class action as it satisfies the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure.

98.    The Class is so numerous that joinder of all members is impracticable.  According to the Company's Proxy, as of the record date of June 18, 2013, there were more than 131 million shares of Power-One's common stock outstanding.

99.    There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a)    whether Defendants violated §§ 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 by filing a materially misleading Proxy;

(b)    whether the Individual Defendants breached their fiduciary duties to the members of the Class or aided and abetted others in the breaches of fiduciary duties by engaging in the conduct alleged herein;

(c)    whether one or more of the Individual Defendants engaged in self-dealing in connection with the Proposed Acquisition;

(d)    whether the Individual Defendants have breached their fiduciary duties to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(e)     whether the Individual Defendants have breached their fiduciary duties of candor to Plaintiff and the other members of the Class by soliciting shareholder votes in favor of the Proposed Acquisition based upon inadequate disclosures;

(f)     whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets; and

(g)     whether Plaintiff and the other members of the Class were harmed by the consummation of the transactions complained of herein.

100.   Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

101.   Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

102.   This action is properly maintained as a class action under Rule 23(b)(1) of the Federal Rules of Civil Procedure, because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

103.   This action is also properly maintained as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure, because Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

104.   Preliminary and final injunctive relief on behalf of the Class as a whole is appropriate because Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class as a whole.

105.   This action is also properly maintained as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, because the questions of law or fact common to members of the Class predominate over any questions affecting the Plaintiff, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Plaintiff anticipates that there will be no difficulty in the management of this litigation.

## IX.   LOSS CAUSATION

106.   As detailed herein, Defendants made false statements and omissions in the Proxy, and the Individual Defendants have unanimously recommended that shareholders vote in favor of the Proposed Acquisition.   By agreeing to the Proposed Acquisition and a share price that unfairly compensates the shareholders, and by agreeing to deal protection devices that prevent the shareholders from receiving the maximum value for their shares, the Defendants have caused and will cause damages to Plaintiff and the other members of the Class.

107.   The false and misleading statements in the Proxy have caused economic injury to Plaintiff and the other members of the Class by artificially depressing the value of the Company's stock, depriving shareholders of the true value of their shares.

108.   Additionally, the payments to executives of the Company under change-in-control agreements, and the payments to directors for their stock options under the Proposed Acquisition, are an unfair distribution of the Company's assets that belong to the stockholders.  These damages are the result of Defendants' false and misleading statements that these payments are a reasonable distribution of assets, which they are not.

### First Cause of Action

### Against the Company and the Individual Defendants for Violations of §14(a) of the Securities Exchange Act

109.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

110.   Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

111.   Defendants filed a false and misleading Proxy with the SEC on May 23, 2013.   The Proxy described the terms of the Proposed Acquisition, but misrepresented and/or omitted material information as described in more detail above.

112.   Defendants solicited action from the Plaintiff and members of the Class by means of this Proxy which contained false and misleading statements concerning, *inter alia*, the value of the Company and how that value was derived, and omitted to state material facts which were necessary to make their statements contained therein not false and misleading, as alleged above.

113.   Each of the matters described above would have been considered by a reasonable investor, separately as well as in the aggregate, to have been material to his or her decision in voting on the matters presented in the Proxy, and to have been a material part of the mix of information upon which such decisions were made.

114.   By reason of the foregoing, the Proxy Statements were materially false and misleading, in violation of Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder.

115.   None of the Individual Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements made in the Proxy were true, without omissions of any material facts, and not misleading. Specifically, each of the Individual Defendants are liable under Section 14(a) of the Exchange Act because they provided material information that they knew, understood and intended would be contained in the Proxy, and that was false and misleading and/or omitted material and necessary facts.

116.   As a result of these Proxy violations, the Class members are threatened with irreparable injury, for which there is no adequate remedy at law, as well as substantial economic damages.

## Second Cause of Action

### Against the Individual Defendants
### for Violations of §20(a) of the Securities Exchange Act

117.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

118.   Each of the Individual Defendants acted as controlling persons of the Company within the meaning of §20(a) of the Exchange Act.  By reason of their positions as officers and directors of Power-One, and their ownership of Power-One stock, these Defendants participated in or were aware of the Company's operations and had intimate knowledge of the false and misleading statements contained in the Proxy.  The Individual Defendants had the power and authority to influence and control, and did influence and control, the decision making of the Company, including the content and dissemination of the Proxy. By causing the Company to engage in the wrongful conduct complained of herein, these Defendants are liable pursuant to §20(a) of the Exchange Act.

119.   The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction, therefore each of the

Individual Defendants was directly involved in the content and creation of the Proxy.

120.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with ownership of Power-One stock.

### Third Cause of Action

### Against the Individual Defendants for Breach of Fiduciary Duty

121.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

122.  Each of the Individual Defendants owed and owes fiduciary duties to Power-One and its shareholders, including the highest obligations of due care, good faith and loyalty.  These fiduciary duties include a duty to conduct due diligence with regard to any acquisition of Power-One and to maximize the benefits to the Company's shareholders.

123.  As directors of Power-One, the Individual Defendants were and are required to use their abilities to control and manage Power-One in a fair, just and equitable manner in order to ensure that the Company is in compliance with applicable laws and contractual obligations, to refrain from abusing their positions of control, and not to favor their own interests at the expense of Power-One and its shareholders.  The Individual Defendants violated their fiduciary duties to Plaintiff and the Class, including without limitation their duties of care, good faith, honesty, and loyalty, by attempting to unfairly prevent Plaintiff and the other members of the Class from obtaining the true value of their shares.

124.  By their acts and omissions alleged herein, the Individual Defendants, and each of them, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Power-One in a manner consistent with the best interest of the shareholders of Power-One.

125.   Each of the Individual Defendants violated his or its duty of care by voting to approve the acquisition of Power-One without acting in the best interests of the shareholders of Power-One.  The Individual Defendants violated their fiduciary duties by approving the Proposed Acquisition to protect their own pecuniary interests in disregard of the shareholders of Power-One.  The Proposed Acquisition was approved for the benefit of the Individual Defendants, to reap profits for themselves at the expense of Power-One and its shareholders.

126.   Additionally, each of the Individual Defendants knew of the inherent conflicts of interest in the structure of the relationship among Power-One and Silver Lake Sumeru, but knowingly or recklessly allowed self-dealing in breach of their fiduciary duties.

127.   As a result of the foregoing, the Individual Defendants have breached their fiduciary duties owed to Power-One's shareholders.  Each of the Individual Defendants knowingly aided, encouraged, cooperated and/or participated in, and substantially assisted the other Individual Defendants in the breaches of their fiduciary duties.

128.   The wrongful conduct particularized herein was not due to an honest error in judgment, but rather to the Individual Defendants' gross mismanagement, bad faith and/or reckless disregard of the rights and interests of Power-One, and it shareholders.  The Individual Defendants dominate and control the business and corporate affairs of Power-One, and are in possession of material private information concerning the Company.  Each of the Individual Defendants used this material private information to benefit his or her own interests at the expense of Plaintiff and other members of the Class.

129.   As a result of the Defendants' wrongful conduct, Power-One's shareholders have suffered and continue to suffer economic losses and non-economic losses, all in an amount to be determined according to proof at the time of trial.  As a direct and proximate result of the Individual Defendants' foregoing

breaches of fiduciary duties, Power-One's shareholders have suffered or will suffer hundreds of millions of dollars in damages, including, but not limited to, the loss of the true value of their assets through the Proposed Acquisition.

130.   Unless enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties to the harm of the public shareholders, and Plaintiff and the members of the Class have no adequate remedy at law.

### Fourth Cause of Action

### Against Verdi Acquisition for
### Aiding and Abetting Breach of Fiduciary Duty

131.   Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

132.   Defendant Verdi Acquisition aided and abetted the Individual Defendants' breaches of fiduciary duty by its active participation, aid, encouragement, and/or ratification of the breach, for its own benefit.

133.   Defendant Verdi Acquisition was fully aware of the breach of fiduciary duties being undertaken by the Individual Defendants.   Verdi Acquisition was, in fact, created to be the instrument of this malfeasance since it was created as a wholly owned subsidiary of ABB for the purpose of merging with Power-One.   As such, Defendant Verdi Acquisition not only provided substantial aid, encouragement, and support to the Individual Defendants, but did so knowingly and intentionally.

134.   The conduct of Defendant Verdi Acquisition was a substantial cause of the harm alleged herein.   If Verdi Acquisition had not provided approval and support to the Proposed Acquisition plan, or if it had prevented the Individual Defendants from breaching their fiduciary duties to Power-One, Power-One and its shareholders would not suffer the serious injuries to be caused by the unfair Proposed Acquisition.

CLASS ACTION COMPLAINT

135.   As a result of this wrongful conduct, Power-One has suffered and continues to suffer economic and non-economic losses, all in an amount to be determined according to proof at trial.

136.   The acts of Verdi Acquisition, and each of them, were done maliciously, oppressively, and with intent to defraud, and Plaintiff on behalf of Power-One is entitled to punitive and exemplary damages in an amount to be shown according to proof at the time of trial.

## X.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment as follows:

A.     An order certifying the Class as set forth herein and designating Plaintiff as the representative thereof;

B.     An order declaring the Proxy to be materially false and misleading in violation of Section 14(a) of the Exchange Act;

C.     An order declaring that the Individual Defendants violated Section 20(a) of the Exchange Act;

D.     An order against all the Individual Defendants for the amount of damages sustained by the Company as a result of the Individual Defendants' violations of federal securities laws, breaches of fiduciary duties, and aiding and abetting breaches of fiduciary duty;

E.     An order awarding to Power-One's shareholders restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants;

F.     An order awarding damages against all Defendants, jointly and severally, in an amount to be proven at trial;

G.     An order awarding a preliminary and/or permanent injunction precluding Power-One and its Board from holding a shareholder vote on behalf

of the Company securing approval of the Proposed Acquisition unless and until adequate supplemental disclosures are made regarding the Proposed Acquisition;

H.    An order directing Defendants to make substantial additional disclosures to the Company's Proxy to make the Proxy not false and misleading;

I.    An order awarding any additional appropriate equitable relief, including any injunctive or declaratory relief necessary to change and/or reform Power-One's corporate governance, policies and culture;

J.    An order awarding restitution, disgorgement of all illicit proceeds generated as a result of the wrongful conduct alleged herein, and punitive damages;

K.    An order awarding pre-judgment interest, as well as reasonable attorneys' fees and other costs; and

L.    An order awarding such other relief as this Court may deem just and proper.

## XI.    JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  June 25, 2013                        JOHNSON & WEAVER, LLP

By: _____
FRANK J. JOHNSON

Frank J. Johnson
Shawn E. Fields
JOHNSON & WEAVER, LLP
110 West "A" Street, Suite 750
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856

*Attorneys for Plaintiff Munjal Mehta*

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, Munjal Mehta, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      I have reviewed the complaint with my counsel and authorize its filing.

2.      I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.      I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 10/20/2010 | 1,250 shares | 10.1960 Per share |
| | | |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| --- | --- | --- |
| | | |

5.      I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.      I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this  24  day of June, 2013.

Munyiel Malu

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>MUNJAL MEHTA, individually and on behalf of all others similarly situated, | **DEFENDANTS**<br>POWER-ONE, INC., RICHARD J. THOMPSON, JON GACEK, KAMBIZ HOOSHMAND, HARTMUT LIEBEL, MARK MELLIAR-SMITH, KYLE RYLAND, AJAY SHAH, RICHARD M. SWANSON, JAY WALTERS, and<br><br>VERDI ACQUISITION CORPORATION |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>JOHNSON & WEAVER, LLP, Frank J. Johnson (SBN 174882)<br>110 West "A" Street, Suite 750, San Diego, CA 92101, (T) 619.230.0063 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☐ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ Proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and 28 U.S.C. Section 1367(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE / PENALTY** | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 610 Agriculture | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☒ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 630 Liquor Laws | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 640 R.R. & Truck | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 650 Airline Regs | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 660 Occupational Safety /Health | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 690 Other | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:   Case Number:**   CV13-04631

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                     CIVIL COVER SHEET                     Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | New York |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| See attached. | See attached. |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _~~signature~~_   Date 6/25/13

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

## Attachment to Civil Cover Sheet

## IX. Venue (b)

Richard J. Thompson – Florida

Jon Gacek – Washington

Kambiz Hooshmand – Santa Clara County

Hartmut Liebel – Florida

Mark Melliar-Smith – England

Kyle Ryland – San Mateo County

Ajay Shah – Michigan

Richard M. Swanson – Kern County

Jay Walters – Alabama

Verdi Acquisition Corporation – Delaware

Power-One, Inc. – Ventura County

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Carla Woehrle.

The case number on all documents filed with the Court should read as follows:

## CV13- 4631 GW (CWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.