1  IRELL & MANELLA LLP
   Craig Varnen (170263) (cvarnen@irell.com)
2  1800 Avenue of the Stars, Suite 900
3  Los Angeles, California 90067
   Telephone: 310-277-1010
4  Facsimile: 310-203-7199

5  CLEARY GOTTLIEB STEEN &
   HAMILTON LLP
6  Mitchell A. Lowenthal (*pro hac vice*) (mlowenthal@cgsh.com)
7  One Liberty Plaza
   New York, New York 10006
8  Telephone: 212-225-2000
9  Facsimile: 212-225-3999

10 *Attorneys for Defendants POWER-ONE, INC.*
   *and VERDI ACQUISITION CORPORATION*

11 O'MELVENY & MYERS LLP
12 Seth Aronson (100153) (saronson@omm.com)
   Matthew W. Close (188570) (mclose@omm.com)
13 400 South Hope Street
   Los Angeles, California 90071
14 Telephone: 213-430-6000
15 Facsimile: 213-430-6407

16 *Attorneys for Defendants RICHARD J. THOMPSON, JON GACEK, KAMBIZ*
   *HOOSHMAND, HARTMUT LIEBEL, MARK MELLIAR-SMITH, KYLE RYLAND,*
17 *AJAY SHAH, RICHARD M. SWANSON, and JAY WALTERS*

18           UNITED STATES DISTRICT COURT

19           CENTRAL DISTRICT OF CALIFORNIA

20 MUNJAL MEHTA, individually and on        ) Case No. 13-cv-04631-GW (CWx)
   behalf of all others similarly situated,  )
21                                           ) <u>CLASS ACTION</u>
                   Plaintiff,                )
22                                           ) **MEMORANDUM OF POINTS**
            vs.                              ) **AND AUTHORITIES IN**
23                                           ) **SUPPORT OF DEFENDANTS'**
   POWER-ONE, INC., RICHARD J.               ) **JOINT MOTION TO DISMISS**
24 THOMPSON, JON GACEK, KAMBIZ               ) **FIRST AMENDED COMPLAINT**
   HOOSHMAND, HARTMUT LIEBEL,                )
25 MARK MELLIAR-SMITH, KYLE                  )
   RYLAND, AJAY SHAH, RICHARD                ) Date:   June 2, 2014
26 M. SWANSON, JAY WALTERS, and              ) Time:   8:30 a.m.
27 VERDI ACQUISITION CORPORATION             ) Ctrm:   10
                                             ) Judge:  Hon. George H. Wu
28              Defendants.                  )

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF FACTS ...........................................................................4

ARGUMENT ............................................................................................8

I.   THIS ACTION BELONGS IN DELAWARE ...........................................8

    A.   Under Forum Non Conveniens, Delaware is the Appropriate Forum ..................................................................8

    B.   No Personal Jurisdiction Here Over Most of the Defendants ...............................................................................11

II.  THE AC FAILS TO STATE A CLAIM ON THE MERITS .......................14

    A.   Plaintiff Cannot State a Claim for Breach of Fiduciary Duty Against   Any Director Defendant .............................................15

        1.   The Breach of Fiduciary Duty Claims Are Barred...................15

        2.   No Breach of the Directors' Duty of Loyalty...........................16

        3.   No Allegation That the Directors Acted in Bad Faith.............18

            a.   The Directors Made A Reasonable Decision to Focus on Potential Buyers Who Were Most Likely to Bid ......................................................19

            b.   No Claim for "Inadequate Consideration" ....................20

            c.   "Deal Protection" Terms Are Common and Unobjectionable..............................................22

        4.   The Disclosure Claims Are Meritless.......................................25

    B.   Plaintiff Fails to Plead that Power-One and Verdi Aided and Abetted  Any Breach of Fiduciary Duty .........................27

CONCLUSION.......................................................................................30

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*,
    CIV.A. 19890-NC, 2005 WL 578972 (Del. Ch. Mar. 3, 2005) ...................28

*Arnold v. Soc'y for Sav. Bancorp, Inc.*,
    650 A.2d 1270 (Del. 1994)...........................................................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................14, 28

*Atl. Marine Constr. Co. v. U.S. District Court for the W. Dist. of Tex.*,
    134 S. Ct. 568 (2013) ...................................................................................8

*Barkan v. Amsted Indus., Inc.*,
    567 A.2d 1279 (Del. 1989)...........................................................................20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................14

*Binks v. DSL.NET, Inc.*,
    C.A. No. 2823-VCN, 2010 WL 1713629 (Del.Ch. Apr. 29, 2010).............18

*Brice v. C.R. England, Inc.*,
    278 F. Supp. 2d 487 (E.D. Pa. 2003) ...........................................................8

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011)......................................................................14

*Chloe SAS v. Sawabeh Info. Servs. Co.*,
    No. CV 11-04147 GAF MANX, 2012 WL 7679386 (C.D. Cal.
    May 3, 2012) ................................................................................................14

*Cinerama, Inc. v. Technicolor, Inc.*,
    663 A.2d 1156 (Del. 1995)...........................................................................25

*Clark v. Bear Stearns & Co., Inc.*,
    966 F.2d 1318 (9th Cir. 1992)......................................................................11

*Cook v. Champion Tankers AS*,
    No. 12–cv–01965–JST, 2013 WL 1629136 (N.D. Cal. Apr. 16,
    2013)............................................................................................................11

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- ii -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

**Page(s)**

*Core-Vent Corp. v. Nobel Industries AB*,
    11 F.3d 1482 (9th Cir. 1993) ......................................................... 11

*Cornell Glasgow, LLC v. La Grange Props., LLC*,
    C.A. No. N11C-05-016 JRS CCLD, 2012 WL 2106945 (Del.
    Sup. Jun. 6, 2012) ......................................................................... 28

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (U.S. Jan. 14, 2014) .............................................. 13

*Dart-Barnett Operating Co., LLC v. Esperada Tex., LP*,
    1:07-CV-1099, 2008 WL 4056783 (W.D. Mich. Aug. 26, 2008) ................. 8

*Davis v. Metro Productions*,
    885 F.2d 515 (9th Cir. 1989) ......................................................... 13

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ......................................................... 11

*Dole Food Co., v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) ......................................................... 8

*E. Onion Co-op Corp. v. E. Onion of Hous., Inc.*,
    CV 91-7021-WDK (TX), 1992 WL 118482 (C.D. Cal. Mar. 30,
    1992) ............................................................................................ 12

*Employers Ins. of Wasau v. Musick, Peeler, & Garrett*,
    871 F. Supp. 381 (S.D. Cal. 1994) ................................................ 14

*Galen Inv. Advisors, Inc., v. Alcatel*,
    No. C 02-2774 MJJ, 2002 WL 31319900 (N.D. Cal. Oct. 10,
    2002) ............................................................................................ 11

*Globis Partners, L.P. v. Plumtree Software, Inc.*,
    No. 1577-VCP, 2007 WL 4292024 (Del. Ch. Nov. 30, 2007) ............. 17, 26

*Graham v. Allis-Chalmers Mfg. Co.*,
    188 A.2d 125 (Del. 1963) .............................................................. 19

*Hack v. The Learning Co.*,
    C.A. Nos. 14657, 1996 WL 633306 (Del. Ch. Oct. 29, 1996) .................. 9

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- iii -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1

**Page(s)**

2

3  *Helicopteros Nacionales de Columbia, S.A. v. Hall*,
       466 U.S. 408 (1984) ......................................................................... 12

4

5  *In re 3Com S'holders Litig.*,
       C.A. No. 5067-CC, 2009 WL 5173804 (Del. Ch. Dec. 18, 2009)............... 23

6

7  *In re Alloy, Inc.*,
       C.A. No. 5626-VCP, 2011 WL 4863716 (Del. Ch. Oct. 13, 2011) ............. 19

8

9  *In re Answers Corp. S'holders, Litig.*,
       C.A. No. 6170-VCN, 2011 WL 1366780 (Del. Ch. Apr. 11,
       2011)................................................................................................. 24

10

11  *In re BioClinica, Inc. S'holder Litig.*,
       No. 8272-VCG, 2013 WL 5631233 (Del. Ch. Oct. 16, 2013)..........16, 19, 27

12

13  *In re BJ's Wholesale Club, Inc.*,
       C.A. No. 6623-VCN, 2013 WL 396202 (Del. Ch. Jan. 31, 2013)..........16, 29

14

15  *In re Carthage Trust*,
       No. 2:12-cv-10861-ODW(PJWx), 2013 WL 589208 (C.D. Cal.
       Feb. 14, 2013)................................................................................... 13

16

17  *In re Cogent, Inc. S'holder Litig.*,
       7 A.3d 487 (Del. Ch. 2010) ............................................................... 23

18

19  *In re CompuCom, Sys. Stockholders Litig.*,
       C.A. No. 499-N, 2005 WL 2481325 (Del. Ch. Sept. 29, 2005).................... 21

20

21  *In re Countrywide Fin. Corp. Derivative Litig.*,
       542 F. Supp. 2d 1160 (C.D. Cal. 2008)................................................ 10

22

23  *In re Dollar Thrifty S'holder Litig.*,
       14 A.3d 573 (Del. Ch. 2010) ............................................................... 20

24

25  *In re Frederick's of Hollywood, Inc. S'holders Litig.*,
       C.A. No. 15944, 1998 WL 398244 (Del. Ch. July 9, 1998) ...................... 29

26

27  *In re General Motors (Hughes) S'holder Litig.*,
       No. Civ.A. 20269, 2005 WL 1089021 (Del. Ch. Mar. 24, 2009) ................ 29

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- iv -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

**Page(s)**

*In re IXC Commnc'ns*,
    No. C.A. 17324, C.A. 17334, 1999 WL 1009174 (Del. Ch. Oct. 27, 1999)...............................................................................................23

*In re Lear Corp. S'holder Litig.*,
    926 A.2d 94, 120 (Del. Ch. 2007).................................................................23

*In re Lear Corp. S'holder Litig.*,
    967 A.2d 640 (Del. Ch. 2008).......................................................................15

*In re Lukens Inc. S'holders Litig.*,
    757 A.2d 720 (Del. Ch. 1999).......................................................................29

*In re Micromet, Inc. S'holders Litig.*,
    No. 7197-VCP, 2012 WL 681785 (Del. Ch. Feb. 29, 2012) .................16, 21

*In re MONY Grp. Inc. S'holder Litig.*,
    852 A.2d 9 (Del. Ch. 2004) *judgment entered sub nom. In re The MONY Grp. Inc. S'holder Litig.*, 20554-NC, 2004 WL 5389603 (Del. Ch. Mar. 1, 2004) ........................................................................21, 24

*In re Morton's Rest. Grp., Inc.*,
    74 A.3d 656 (Del. Ch. 2013).........................................................................17

*In re Novell, Inc. S'holder Litig.*,
    C.A. No. 6032-VCN, 2013 WL 322560 (Del. Ch. Jan. 3, 2013).................18

*In re OPENLANE, Inc. S'holder Litig.*,
    No. 6849–VCN, 2011 WL 4599662 (Del. Ch. Sep. 30, 2011).....................25

*In re Pennaco Energy, Inc. S'holders Litig.*,
    787 A.2d 691 (Del. Ch. 2001).......................................................................24

*In re Smurfit-Stone Container Corp. S'holder Litig.*,
    C.A. No. 6164-VCP, 2011 WL 2028076 (Del. Ch. May 20, 2011)..........................................................................................21

*In re Synthes, Inc. S'holder Litig.*,
    50 A.3d 1022 (Del. Ch. 2012).......................................................................17

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- v -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1

**Page(s)**

2

3   *In re Toys "R" Us, Inc. S'holder Litig.*,

4        877 A.2d 975 (Del. Ch. 2005) ...................................................................... 19

5   *In re Vitalink Commc'n Corp. S'holders Litig.*,

6        C.A. No. 12085, 1991 WL 238816 (Del. Ch. Nov. 8, 1991) ........................ 21

7   *In re W. Nat. Corp. S'holders Litig.*,

8        No. 15927, 2000 WL 710192 (Del. Ch. May 22, 2000) ............................... 18

9   *In re Walt Disney Co. Derivative Litig.*,

        906 A.2d 27 (Del. 2006).................................................................................. 3

10  *In re Walt Disney Co. Derivative Litig.*,

11        907 A.2d 693 (Del. Ch. 2005) ...................................................................... 19

12  *LeDuc v. Ky. Cent. Life Ins. Co.*,

13        814 F. Supp. 820 (N.D. Cal. 1992) ............................................................... 13

14  *Lou v. Belzberg*,

15        834 F.2d 730 (9th Cir. 1987) ........................................................................ 10

16  *Loudon v. Archer-Daniels-Midland Co.*,

17        700 A.2d 135 (Del. 1997)............................................................................... 25

18  *Lueck v. Sundstrand Corp.*,

19        236 F.3d 1137 (9th Cir. 2001) ................................................................... 9, 10

20  *Malpiede v. Townson*,

        780 A.2d 1075 (Del. 2001)................................................................. 18, 27, 29

21  *Matsushita Elec. Indus. Co., Ltd. v. Epstein*,

22        516 U.S. 367 (1996) ...................................................................................... 11

23  *McMillan v. Intercargo Corp.*,

24        768 A.2d 492 (Del. Ch. 2000) ........................................................... 15, 23, 24

25  *Metz v. U.S. Life Ins. Co. in City of New York*,

26        674 F. Supp. 2d 1141 (C.D. Cal. 2009)........................................................ 10

27  *MGA Entm't, Inc. v. Innovation First, Inc.*,

28        525 F. App'x 576 (9th Cir. 2013)................................................................... 12

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- vi -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

**Page(s)**

*MJT Securities, LLC v. Toronto-Dominion Bank*,
   No. C 03-3815 CW, 2007 WL 1725421 (N.D. Cal. 2007) ..........................27

*Morgan v. Cash*,
   C.A. No. 5053-VCS, 2010 WL 2803746 (Del. Ch. July 16, 2010) .............29

*Mujica v. Occidental Petroleum Co.*,
   81 F. Supp. 2d 1134 (C.D. Cal. 2005)............................................................8

*Orman v. Cullman*,
   794 A.2d 5, 27 (Del. Ch. 2002) .................................................................16

*Palmco Corp. v. JSC Techsnabexport*,
   448 F. Supp. 2d 1194 (C.D. Cal. 2006)........................................................10

*Paramount Commc'ns, Inc. v. QVC Network, Inc.*,
   637 A.2d 34 (Del. 1994)...............................................................................19

*Parnes v. Bally Entm't Corp.*,
   CIVA. 15192, 2001 WL 224774 (Del. Ch. Feb. 23, 2001), *aff'd*,
   788 A.2d 131 (Del. 2001)..............................................................................21

*Porter v. Tex. Commerce Bancshares, Inc.*,
   C.A. No. 9114, 1989 WL 120358 (Del. Ch. Oct. 12, 1989) ........................20

*Rand v. W. Airlines, Inc.*,
   C.A. No. 8632, 1989 WL 104933 (Del. Ch. Sep. 11, 1989)........................29

*Related Westpac LLC v. Jer Snowmass LLC*,
   No. 5001, 2010 WL 2929708 (Del. Ch. July 23, 2010)...............................27

*Reno v. Baird*,
   957 P.2d 1333 (Cal. 1998).............................................................................28

*Ruger v. Superior Court*,
   173 Cal. Rptr. 302 (Cal. Ct. App. 1981) ......................................................13

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004)..................................................................12, 13

*Shaffer v. Heitner*,
   433 U.S. 186 (1977) ......................................................................................13

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- vii -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

**Page(s)**

*Skeen v. Jo-Ann Stores, Inc.*,
 750 A.2d 1170 (Del. 2000)...............................................................25

*Solomon v. Pathe Commc'ns Corp.*,
 CIV. A. 12563, 1995 WL 250374 (Del. Ch. Apr. 21, 1995),
 *aff'd*, 672 A.2d 35 (Del. 1996)......................................................22

*Telesaurus, VPC, LLC v. Power*,
 623 F.3d 998 (9th Cir. 2010)....................................................14, 28

*Unocal Corp. v. Mesa Petroleum Co.*,
 493 A.2d 946 (Del. 1985).................................................................24

*Williams v. Sears Roebuck & Co.*,
 No. C97-3794 FMS, 1998 WL 61307 (N.D. Cal. Jan. 29, 1998).................10

**Statutes**

8 Del. Code § 102(b)(7).........................................................................15

8 Del. Code § 262 ................................................................................20

**Other Authorities**

14D Wright & Miller, *Federal Practice and Procedure*, § 3828.............................8

Edward P. Welch., et al., *Folk on the Delaware General Corporation Law*,
 § 327.11.6.3 (2014) ...........................................................................9

Leo E. Strine, Jr., et al., *Putting Stockholders First, Not the First-Filed Complaint,* 69 BUSINESS LAWYER 1 (2013) ......................................1

**Rules**

Cal. Civ. Proc. Code § 410.10 ...............................................................12

Fed. R. Civ. P. 12.............................................................................11, 14

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- viii -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants[1] respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Complaint (the "AC").

### **PRELIMINARY STATEMENT**

This action is based upon the acquisition of Power-One by non-party ABB, Ltd. ("ABB") for a premium, all cash price—valued at approximately $1 billion—that was overwhelmingly approved by Power-One stockholders (the "Merger").  AC ¶¶ 1-2.

The mere announcement that ABB had entered into a merger agreement with Power-One (the "Merger Agreement") generated a bevy of lawsuits, filed in the Delaware Chancery Court and the Ventura County Superior Court, by purported Power-One stockholders seeking to enjoin the transaction.  Such litigation is, unfortunately, ubiquitous:  essentially every merger involving a U.S. public company spawns stockholder suits.[2]  Here, within weeks, twelve nearly-identical lawsuits were filed, each asserting the same claims against the same defendants on behalf of the same purported class and seeking the same relief.  One such action, filed in Ventura County, was brought in the name of James Crehan; he is now the appointed Lead Plaintiff in this action.  The Ventura County Court consolidated all the cases pending there (including Mr. Crehan's action), and determined that Delaware was the appropriate forum within which to litigate allegations that the

---

[1]   The Defendants are Power-One, Inc. ("Power-One"), Verdi Acquisition Corporation ("Verdi," referred to in the AC as "Merger Sub"), and the "Director Defendants," who are: Richard J. Thompson, Jon Gacek, Kambiz Hooshmand, Hartmut Liebel, Mark Melliar-Smith, Kyle Ryland, Ajay Shah, Richard M. Swanson, and Jay Walters.  Together, the Director Defendants comprised Power-One's Board of Directors (the "Board") at the time of the transaction.

[2]   *See, e.g.,* Leo E. Strine, Jr., et al., *Putting Stockholders First, Not the First-Filed Complaint,* 69 BUSINESS LAWYER 1, 8 (2013) ("In 2010 and 2011, 91 percent of all deals worth over $100 million were litigated, and these deals were targeted with an average of 5.1 lawsuits each.").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 1 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1   Directors of Power-One, a Delaware company, breached their fiduciary duties—

2   duties exclusively defined by Delaware law—in connection with entering into the

3   Merger Agreement.  The Delaware cases went forward.  Ultimately, the Delaware

4   plaintiffs concluded that there was no merit to continued litigation because the

5   preliminary proxy statement they challenged was amended by the definitive proxy

6   statement (the "Proxy;" Ex. A)[3] mailed to stockholders in advance of the vote on the

7   Merger, and, given the ample disclosure in the Proxy, there was no further basis to

8   challenge the Merger.  In specific, they represented to the Chancery Court that any

9   challenges to the Merger were "either moot or do not have merit."  *See* Ex. B

10  (Stipulated Order Dismissing Action and Setting Schedule for Plaintiffs' Counsel's

11  Fee Application) at 2.

12      This action was commenced long after those filed in state court.  The initial

13  complaint (filed by Munjal Mehta) asserted the same claims that were already

14  pending in the state courts, except that it also asserted claims under the Securities

15  Exchange Act of 1934.  The inclusion of the federal claims required the Court to

16  undertake a lead plaintiff appointment process, which led to the appointment of

17  Mr. Crehan as the sole Lead Plaintiff.

18      Mr. Crehan's AC completely abandons the federal claims previously asserted.

19  As a result, this case is in all material respects identical to the first-filed state court

20  cases:  it is based on the same events and solely alleges Delaware law claims against

21  the same Defendants and on behalf of the same plaintiff class.  Those state law

22  claims do not belong in this Court, for multiple reasons.  First, as the Ventura

23  County Court correctly determined (in a ruling to which Mr. Crehan is bound, but in

24  any event whose reasoning is powerful), this action should be adjudicated, if

25  anywhere, in Delaware.  Among other things, Delaware law governs the claims

26  asserted, all Defendants are subject to jurisdiction there, and a member of the

27  _____

28  **3**   All exhibits cited herein are attached to Defendants' Request for Judicial
    Notice filed simultaneously herewith, and shall be referred to herein as "Ex.__."

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 2 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

Delaware judiciary is already familiar with the issues and will have to pass on the merits of the claims Mr. Crehan wishes to pursue.  Indeed, Mr. Crehan cannot even establish that this Court has jurisdiction over a majority of the Defendants; not a single fact is alleged that could provide for jurisdiction over the six Nonresident Defendants.[4]

Second, under settled law, Mr. Crehan's claims are without merit.  Delaware law makes clear that directors are not liable for damages where, as here, there are no plausible allegations of disloyalty or bad faith.  None of the nine Board members suffered from disabling conflicts; their interests were fully aligned with those of all Power-One stockholders in seeking the highest price reasonably available for the company's stock and evaluating whether a sale was likely to maximize stockholder value.  And none acted in bad faith: while the AC quarrels with the Board's judgment about how the sale process should have been run, and the ultimate price it accepted, Mr. Crehan falls well short of pleading facts showing that the Board "consciously and intentionally disregarded [its] responsibilities," *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 62 (Del. 2006), as he must do to sustain a claim.  Moreover, it was for Power-One stockholders to decide whether the price was fair, as they overwhelmingly did in approving the Merger.  Finally, while the AC alleges two omissions in the Proxy, the charge is baseless—the Proxy disclosed all material facts.

Similarly, the AC's aiding and abetting claims (brought against Power-One itself, and Verdi, the ABB subsidiary which merged into Power-One) fail.  They depend on the AC having shown a breach of fiduciary duty in the first place, which it does not.  Independently, there are no plausible allegations that either Power-One

___

[4]   They are: Gacek (Washington), Liebel (Florida), Melliar-Smith (Great Britain), Shah (Michigan), Walters (Alabama), and Verdi (Delaware).  AC ¶¶ 16-17, 19-20, 22, 24, 26.  Defendant Thompson, Power-One's former CEO, is alleged to be a Florida resident.  *Id.* ¶ 16.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations
2985750
- 3 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS

1  or Verdi "knowingly participated" in any such breach, and in any event Power-One
2  could not as a legal matter have abetted the conduct of its own Board.

3  Accordingly, the Court should dismiss the AC with prejudice if it does not
4  defer to the Delaware forum.

### STATEMENT OF FACTS

#### A.   The Parties

7  Lead Plaintiff James Crehan asserts claims against Power-One, a Delaware
8  corporation that designs, manufactures, and sells renewable energy power supply
9  products, AC ¶¶ 15, 29, and Verdi, another Delaware corporation, that was created
10  by ABB solely to effectuate the Merger. *Id.* ¶ 26. The other Defendants are the nine
11  members of Power-One's Board. *Id.* ¶¶ 16-24.[5]

#### B.   The Board's Extensive Evaluation Process

13  Beginning in mid-2011, Power-One's Board engaged in an intensive and
14  lengthy process to evaluate strategies for increasing the company's value. In
15  approximately June 2011, several inquiries were received regarding potential
16  business combinations, including an inquiry from ABB. AC ¶ 46. In response to
17  these inquiries, in July 2011 the Board approved the retention of Goldman Sachs
18  ("Goldman") as its financial advisor. *Id.* ¶ 48. The Board also directed Goldman to
19  contact "various parties about a possible business combination" with Power-One.
20  *Id.* ¶ 50. But soon thereafter Power-One's stock plummeted "due in large part to the
21  lingering effects of the financial crises as well as the European credit crisis." *Id.* ¶¶
22  42-50. Faced with declining stock prices, as well as dwindling interest from
23  potential buyers, in the fall of 2011 Power-One broke off all discussions regarding a
24  possible sale of the company. *Id.* ¶ 50. Nearly a year passed.

---

[5]   The AC also refers to two other parties: ABB, a Swiss corporation which
agreed to acquire Power-One and formed Verdi for the purpose of effectuating the
transaction, *id.* ¶ 27, and Silver Lake Sumeru ("Silver Lake"), a private equity firm
that allegedly was the beneficial owner of approximately 33% of Power-One's
common stock. *Id.* ¶ 28.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 4 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1    In summer 2012, the Board consulted with Goldman and decided to re-initiate

2    discussions regarding a possible merger.  *Id*. ¶ 52.  The Board appointed a sub-

3    committee to aid in the sale process, *id*. ¶ 54, and engaged a leading international

4    law firm as its legal advisor.  The interests of all five members of the subcommittee,

5    like those of the Board as a whole, were fully aligned with those of all stockholders:

6    two were affiliated with Power-One's largest stockholder (Silver Lake) and

7    therefore had an interest second to none in maximizing the value of Power-One

8    stock; two others were independent, outside directors elected to the Board by

9    stockholders as a whole; and the final member was Power-One's CEO, Thompson,

10   who also owned Power-One stock.  *See id*. ¶¶ 21-22, 28, 96.

11    In September 2012, after reviewing preliminary financial analyses and

12   discussing over a dozen potential buyers, Power-One instructed Goldman to contact

13   those parties believed to have made "the most serious and sincere indications of

14   interest" in acquiring the company.  *See id*. ¶¶ 57, 71.  Throughout the fall of 2012,

15   Power-One representatives had discussions with these potential buyers, *see id*. ¶¶

16   57, 60, and entered into non-disclosure and standstill agreements with five of them.

17   *Id*. ¶ 103.  In addition, press reports made the marketplace aware that Power-One

18   was exploring a sale.  *Id*. ¶ 58.  Nevertheless, after months of exploring, in February

19   2013 Goldman reported that only ABB had expressed "a serious level of interest in

20   pursuing a transaction."  *Id*. ¶ 61.

21    ***C.     The Merger Agreement***

22    For months, Power-One negotiated with ABB.  AC ¶¶ 63-68, 72.  On April

23   12, 2013—almost two full years after Power-One began to explore a possible

24   merger—ABB made its "best and final" offer of $6.35 per share, *see id*. ¶ 72, which

25   represented a 57% premium over the price at which Power-One's shares traded at

26   that time, Ex. A at 47, and which valued Power-One at approximately $1 billion.

27   AC ¶ 75.  As the AC concedes, the Board met to consider ABB's offer, and

28   "determined that the possibility of consummating a transaction at $6.35 per share on

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750                                   - 5 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1  acceptable contractual terms would maximize stockholder value." *Id.* ¶ 73.  Further

2  negotiations secured those "acceptable contractual terms," and the Board

3  "unanimously approved the Acquisition."  *Id.* ¶ 74.

4       At the special meeting called to permit Power-One stockholders to vote on the

5  proposed Merger, an overwhelming majority of the shares voted—98%—were cast

6  in favor of the Merger, which was completed on July 25, 2013.  *See id.* ¶ 77; Ex. C

7  (Power-One Form 8-K, filed July 23, 2013).

8       ***D.     The Delaware Actions***

9       The proposed Merger was publicly announced on April 22, 2013.  Within just

10  a few weeks, twelve shareholder lawsuits were filed seeking to enjoin the Merger:

11  four in the Delaware Chancery Court and eight in the Ventura County Superior

12  Court.  The Delaware actions were assigned to Vice Chancellor Laster, who

13  conducted proceedings, including a hearing, and ultimately appointed plaintiffs to

14  lead the putative class (the "Delaware Lead Plaintiffs") and counsel to represent

15  them.  Ex. D (June 4, 2013 Order).  On June 12, 2013, the Delaware Lead Plaintiffs

16  filed an amended complaint that challenged aspects of the draft preliminary proxy

17  statement filed by Power-One with the Securities and Exchange Commission.  Ex. E

18  (Delaware Amended Complaint).  However, once the revised, final Proxy was

19  mailed to Power-One's stockholders, Ex. A, the Delaware Lead Plaintiffs

20  determined that Power-One's stockholders had received all the information

21  applicable law required, and that there was no other basis to challenge to the

22  Merger.  Ex. B at 2 (challenges to the Merger "are either moot or do not have

23  merit").

24       Accordingly, Vice Chancellor Laster agreed to dismiss (without prejudice)

25  the Delaware actions but specifically reserved continuing jurisdiction to consider

26  any attorneys' fee application by lawyers representing Power-One stockholders.  *Id.*

27  ¶ 3.  Under Delaware law, the Chancery Court may not award any such fee unless it

28  determines that the action is in fact moot because there is no merit to further

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750                                                 - 6 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1  challenges to the Proxy or the Merger.  In other words, whether the AC states a

2  claim is directly relevant to the award of fees in Delaware, which remains within the

3  jurisdiction of the Chancery Court.

4      **E.    The Ventura County Actions**

5      The Ventura County actions, including the one filed by Mr. Crehan,[6] were

6  consolidated and then stayed on the basis of *forum non conveniens*.  Ex. F (the

7  "*FNC* Order").  The Superior Court applied substantially the same *forum non*

8  *conveniens* test applicable here, and held that Delaware was an adequate alternative

9  forum, Delaware law governed the asserted claims, no showing was made that

10  plaintiffs needed California courts to protect their rights, and California's interest in

11  the matter was "attenuat[ed]."  *See FNC* Order at 3-4.

12      **F.    This Action**

13      On June 25, 2013, Munjal Mehta commenced this action.  Mr. Mehta's

14  complaint parroted the allegations pending in state court, but added claims under the

15  federal securities laws (over which federal courts have exclusive subject matter

16  jurisdiction).  Class Action Complaint, D.E. 1 at ¶¶ 109-20.  As a result, the Court

17  undertook the lead plaintiff appointment process mandated by the Private Securities

18  Litigation Reform Act of 1995 (the "PSLRA").  On September 13, 2013, Mr.

19  Crehan—alone—moved to be appointed as PSLRA lead plaintiff, and was so

20  appointed.  Motion for Appointment as Lead Plaintiff, D.E. 34 at 1.[7]

21

22      [6] *Crehan v. Power-One, Inc. et al.*, No. 56-2013-00435522-CU-SL-VTA

23  (filed April 25, 2013).  The consolidated Ventura County action is *Rodney Ty Ross*

24  *v. Power-One, Inc. et al.*, Consolidated Case No. 56-2013-00435285-CU-BT-VTA
   (filed April 22, 2013).  Mr. Crehan told this Court that he "was not even informed as

25  to whether a complaint had even been filed" in his name in California state court.
   Declaration of James Crehan, Docket Entry ("D.E.") 30-3 at 4.  His Ventura County

26  case remained pending until, to facilitate his appointment as Lead Plaintiff here, in

27  October of 2013 he requested it be dismissed.

28      [7]   Despite claiming that Power-One stockholders were receiving materially
   misleading information about the Merger, Mr. Mehta (who was represented by Mr.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 7 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1    The AC Mr. Crehan filed abandons the federal claims asserted in the initial

2    complaint.  The AC *solely* asserts the same state law claims against the same

3    defendants, and on behalf of the same class, as did Mr. Crehan's stayed state court

4    action.  Indeed, the sole basis for the Court's subject matter jurisdiction is now

5    diversity of citizenship.  AC ¶ 11.  As framed by the AC, therefore, this action is

6    now entirely duplicative of the various earlier-filed state court proceedings.

7                                    **ARGUMENT**

8    **I.    THIS ACTION BELONGS IN DELAWARE**

9          **A.    *Under* Forum Non Conveniens, *Delaware is the Appropriate Forum***

10         Federal courts may dismiss on grounds of *forum non conveniens* cases that

11   are more appropriately litigated in state court.  *Atl. Marine Constr. Co. v. U.S.*

12   *District Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 579-580 (2013) (*forum non*

13   *conveniens* permits dismissal in favor of mfore convenient state forum); 14D Wright

14   & Miller, Federal Practice and Procedure § 3828 at 565 (2014) (if superior forum is

15   a state court, federal court "may dismiss (or stay) the case under the ancient doctrine

16   of *forum non conveniens*").[8]

17         Under *forum non conveniens*, dismissal (or a stay) is appropriate when: (1) an

18   adequate alternative forum exists,[9] and (2) the balance of private and public interest

19   ───────────────────────────────────────────

20   Crehan's counsel) made no effort to seek relief for the stockholder class by moving
     to enjoin the transaction, seeking lead plaintiff appointment or otherwise.

21        **8**   *See also Dart-Barnett Operating Co., LLC v. Esperada Tex., LP*, 1:07-CV-
     1099, 2008 WL 4056783 (W.D. Mich. Aug. 26, 2008) (*forum non conveniens*

22   dismissal in favor of Texas court); *Brice v. C.R. England, Inc.*, 278 F. Supp. 2d 487,

23   490 (E.D. Pa. 2003) (*forum non conveniens* dismissal in favor of Ohio state court);
     *cf. In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1170-74

24   (C.D. Cal. 2008) (staying case alleging breaches of fiduciary duty arising out of

25   merger agreement in favor of Delaware forum).

26        **9**   "An alternative forum ordinarily exists when defendants are amenable to
     service of process in the foreign forum," and the forum is adequate if it "provides

27   the plaintiff with a sufficient remedy for his wrong."  *Mujica v. Occidental*
     *Petroleum Co.*, 381 F. Supp. 2d 1134, 1140 (C.D. Cal. 2005) (citing *Dole Food Co.,*

28   *v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 8 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1   factors favors dismissal.  *See, e.g.*, *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147

2   (9th Cir. 2001).  Such relief is appropriate here.

3   First, there is an obvious alternative forum: Delaware.  All of the Defendants

4   are subject to personal jurisdiction in Delaware, either because they were organized

5   under the laws of Delaware, in the cases of Power-One and Verdi, or because the

6   claims are based on their service as directors of a Delaware corporation, and by

7   statute they have consented to the jurisdiction of the Delaware courts.  Del. Code

8   Ann. tit. 10, § 3114 (2009).  Further, the Delaware Court of Chancery has already

9   invested time handling a consolidated action asserted on behalf of the same class

10  against the same defendants, concerning the same transaction, and alleging claims

11  arising under the same law.  As the Ventura County Court found, the "Delaware

12  courts have experience with Delaware law, and in particular with the Delaware

13  corporation codes, regulations and laws."  *FNC* Order at 4.  Moreover, the Court of

14  Chancery will have to pass on the merits of the same claims Mr. Crehan alleges in

15  connection with adjudicating the anticipated fee application of the Delaware Lead

16  Plaintiffs.[10]

17  Second, the balance of public and private factors decidedly weighs in favor of

18  Delaware.  The public interest factors are: (1) local interest in the lawsuit; (2) the

19  court's familiarity with governing law; (3) burden on local courts and juries;

20  (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to the

21  forum.  *Lueck*, 236 F.3d at 1147.  Plainly, Delaware has the greater interest in

22  applying Delaware law to claims against Delaware corporations and their directors.

23  With respect to the Merger, the Ventura County Court already found that Delaware

24  courts are uniquely experienced in the application of the law governing the claims

25  ――――――――――――――

26  **10**   *See Hack v. The Learning Co.*, C.A. Nos. 14657, 1996 WL 633306, at *1
(Del. Ch. Oct. 29, 1996) (the Court must be satisfied that "the case is moot");

27  Edward P. Welch, et al., *Folk on the Delaware General Corporation Law*, §

28  327.11.6.3 (2014) (entitlement to fee requires action in response to a lawsuit "that
cures the alleged wrong" and "thereby moots or settles the lawsuit").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 9 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

asserted here, and that the Delaware Court retaining jurisdiction over the Power-One Delaware actions "has shown itself attuned and adept to class action suits." *FNC Order* at 4. Moreover, the fact that Delaware law governs the claims the AC alleges is a "compelling factor" in the *forum non conveniens* analysis. *Id.* at 3; *see also Palmco Corp. v. JSC Techsnabexport*, 448 F. Supp. 2d 1194, 1201 (C.D. Cal. 2006); *Countrywide*, 542 F. Supp. 2d at 1173 (that Delaware law governs makes it "a particularly suitable forum").

The private interest factors are: (1) the residence of parties and witnesses; (2) the forum's convenience to litigants; (3) access to physical evidence and other proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to testify at trial; (6) enforceability of the judgment; and (7) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Lueck*, 236 F.3d at 1145. Although some of these factors are in equipoise, the fact that all Defendants are subject to personal jurisdiction only in Delaware tilts the private interest factors in favor of dismissal. In the electronic age, the physical location of documents is irrelevant; the corporate and financial records at issue here "are in their most usable form in electronic versions and can be transmitted with ease to Delaware." *FNC Order* at 3; *see also Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009) (granting motion to transfer, in part because "advances in technology have made it easy for documents to be transferred to different locations."). Further, Mr. Crehan is a Massachusetts citizen, AC ¶ 14; Delaware is therefore closer to home for him.[11] And, the Defendants are either Delaware corporations or (as noted above) by statute have consented to the jurisdiction of the Delaware courts. It is far more convenient

---

[11] Because Mr. Crehan seeks to bring a representative action, his choice of forum is entitled to little deference. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Williams v. Sears Roebuck & Co.*, No. C97-3794 FMS, 1998 WL 61307, at *1 (N.D. Cal. Jan. 29, 1998) ("There is little deference given to choice of forums by plaintiff[s] representing a nationwide class.").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 10 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1  to litigate in the only forum where all parties can be joined.  Finally, there is no

2  basis for assuming (much less evidence showing) that any necessary witness cannot

3  be compelled to testify, or reason to doubt the enforceability of a judgment.  *See*

4  *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 386 (1996) (Delaware

5  judgment entitled to full faith and credit).

6          Independently, and overarchingly, Mr. Crehan is estopped from re-litigating

7  the issue of *forum non conveniens*.  "Collateral estoppel, or issue preclusion, bars

8  the relitigation of issues actually adjudicated in previous litigation between the same

9  parties."  *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992).

10  Mr. Crehan, who was a named party in the Ventura County actions, cannot now re-

11  litigate whether this case belongs in Delaware.  *See, e.g.*, *Cook v. Champion Tankers*

12  *AS*, No. 12–cv–01965–JST, 2013 WL 1629136, at *3-4 (N.D. Cal. Apr. 16, 2013)

13  (dismissing complaint based on preclusive effect of previous *forum non conveniens*

14  dismissal from California state court).

15          ## B.    *No Personal Jurisdiction Here Over Most of the Defendants*

16          If this action is not sent to Delaware, all claims against most Defendants must

17  be dismissed for lack of personal jurisdiction.

18          The AC alleges no facts that would support the exercise of jurisdiction over

19  the six Nonresident Defendants.  *See* n.4, *supra* (listing Nonresident Defendants).

20  To survive a Fed. R. Civ. P. 12(b)(2) motion to dismiss, plaintiff must "demonstrate

21  facts that if true would support jurisdiction over the defendant."  *Doe v. Unocal*

22  *Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citation omitted).  Where, as here, there is

23  no applicable federal statute, the Court may exercise personal jurisdiction over a

24  nonresident defendant only to the extent permitted by the law of California.[12]

25  California's long-arm statute permits the exercise of jurisdiction "on any basis not

26

27          [12]   *Galen Inv. Advisors, Inc., v. Alcatel*, No. C 02-2774 MJJ, 2002 WL

28  31319900, at *2 (N.D. Cal. Oct. 10, 2002) (citing *Core-Vent Corp. v. Nobel*
*Industries AB*, 11 F.3d 1482, 1484 (9th Cir. 1993)).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 11 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1  inconsistent with the Constitution of this state or of the United States."  Cal. Civ.

2  Proc. Code § 410.10.  The sole question for jurisdictional purposes, then, is whether

3  Mr. Crehan has established that each Defendant has sufficient "'minimum contacts'

4  with [California] such that the exercise of jurisdiction 'does not offend traditional

5  notions of fair play and substantial justice.'"  *Schwarzenegger v. Fred Martin Motor*

6  *Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

7          Thus, to meet his burden of establishing personal jurisdiction over the

8  Defendants, Mr. Crehan must show that one of two forms of personal jurisdiction

9  exists here: (1) general jurisdiction, in which the nonresident defendant's

10  "substantial and continuous" contacts with the forum allow the exercise of

11  jurisdiction for causes of action unrelated to the defendant's forum contacts; or (2)

12  specific jurisdiction, which exists "when the defendant's contacts with the forum are

13  sporadic, but the cause of action arises directly out of those contacts."  *E. Onion Co-*

14  *op Corp. v. E. Onion of Hous., Inc.*, CV 91-7021-WDK (TX), 1992 WL 118482 at

15  *1 (C.D. Cal. Mar. 30, 1992) (citing *Helicopteros Nacionales de Columbia, S.A. v.*

16  *Hall*, 466 U.S. 408, 414–15 (1984)).  The AC fails to do so.

17          **No General Jurisdiction.**  There is no general jurisdiction over any of the six

18  Nonresident Defendants.  The AC, in wholly conclusory fashion, asserts that there is

19  jurisdiction over the two corporate defendants because each "conducts business in

20  and maintains operations in this District."  AC ¶ 12.  Inadequate on its face as a

21  pleading matter,[13] the allegation is in any event substantively defective as to Verdi.

22  Earlier this year, the Supreme Court made clear that, to establish general jurisdiction

23  over a corporation, a party must plausibly allege that the corporation is "at home" in

24  the state, and to be "at home" means that it must either be incorporated in that state

---

25  [13]  Even under Rule 8, wholly conclusory assertions are inadequate.  *See, e.g.,*

26  *MGA Entm't, Inc. v. Innovation First, Inc.*, 525 F. App'x 576, 578 (9th Cir. 2013)

27  (plaintiff "cannot 'simply rest on the bare allegations of its complaint, but rather [is]

28  obligated to come forward with facts . . . supporting personal jurisdiction.'")
   (citations omitted).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 12 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1   or headquartered there.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (U.S. Jan.

2   14, 2014).  But the AC concedes that Verdi is chartered in Delaware, AC ¶ 26, and

3   notably fails to (and cannot) allege that it is headquartered in California.

4          Plaintiff likewise fails to establish general jurisdiction over the other

5   Nonresident Defendants.  There are no allegations that any of those Directors

6   maintained any continuous presence in California.  And the law is clear that simply

7   serving as a director of a corporation with headquarters in California does not

8   subject the director to personal jurisdiction here.[14]  Indeed, the Due Process Clause

9   compels this conclusion.  *See Shaffer v. Heitner*, 433 U.S. 186, 214 (1977).

10         **No Specific Jurisdiction.**  Plaintiff also fails to establish specific jurisdiction

11  over the Nonresident Defendants.  Courts in the Ninth Circuit use a three-part test to

12  determine the availability of specific jurisdiction: "(1) the defendant must

13  purposefully avail himself of the benefits and protections of the forum state; (2) the

14  claim must arise out of, or be related to, the defendant's forum-based activity; and

15  (3) exercise of jurisdiction must comport with fair play and substantial justice."  *In*

16  *re Carthage Trust*, No. 2:12-cv-10861-ODW(PJWx), 2013 WL 589208, at *6 (C.D.

17  Cal. Feb. 14, 2013) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

18  797, 801 (9th Cir. 2004)).

19         Here, Mr. Crehan has failed to allege that *any* of the Nonresident Defendants

20  had *any* contact with California that might support the exercise of jurisdiction;

21

22         **14**   *See, e.g.*, *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 824 (N.D.

23  Cal. 1992) ("The mere fact that a corporation is subject to general jurisdiction does

24  not mean that its non-resident officers and directors are subject to jurisdiction as

    well . . . .  Each defendant's contacts with the forum state must be examined

25  individually to determine whether that defendant has sufficient minimum contacts to

    support a finding of jurisdiction.") (citing *Davis v. Metro Productions*, 885 F.2d

26  515, 520 (9th Cir. 1989)); *Ruger v. Superior Court*, 173 Cal. Rptr. 302, 306 (Cal. Ct.

27  App. 1981) (nonresident defendant's "position as officer, shareholder, and employee

    does not supply the missing link for a constitutionally cognizable relationship with

28  California supplying the basis for personal jurisdiction").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750                                    - 13 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1   indeed, the AC does not identify any merger-related activity that took place in

2   California.  Instead, the AC simply asserts the conclusion that each defendant had

3   "minimum contacts with the District" out of which the claims arose, without ever

4   identifying a single such contact.  AC ¶ 12.  Such "conclusory statements are not

5   enough to satisfy a prima facie showing of jurisdiction without supporting evidence

6   contained in the record."  *Chloe SAS v. Sawabeh Info. Servs. Co.*, No. CV 11-04147

7   GAF MANX, 2012 WL 7679386, at *11 (C.D. Cal. May 3, 2012).

8   **II.    THE AC FAILS TO STATE A CLAIM ON THE MERITS**

9         Independently, the AC must also be dismissed because it fails to state a claim

10   upon which relief can be granted.

11         *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) sets forth a three-step analysis for

12   considering a motion under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

13   First, the Court must determine the elements of the cause of action.  *Iqbal,* 556 U.S.

14   at 676.  Second, the Court identifies "pleadings that, because they are no more than

15   conclusions, are not entitled to the assumption of truth."  *Telesaurus, VPC, LLC v.*

16   *Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).  Finally,

17   the Court must consider whether "after eliminating such unsupported legal

18   conclusions," the remaining "well-pleaded factual allegations" plausibly suggest an

19   entitlement to relief.  *Telesaurus*, 623 F.3d at 1003 (citation omitted).  Thus, a

20   complaint that contains only "labels and conclusions" or a "formulaic recitation of

21   the elements of the cause of action" cannot survive dismissal.  *Cervantes v.*

22   *Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (citing *Bell Atl.*

23   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Further, the Court need not accept as

24   true allegations that contradict facts that have been judicially noticed.  *See*

25   *Employers Ins. of Wasau v. Musick, Peeler, & Garrett*, 871 F. Supp. 381 (S.D. Cal.

26   1994).

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 14 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

**A.      *Plaintiff Cannot State a Claim for Breach of Fiduciary Duty Against Any Director Defendant***

The AC fails to state a claim for breach of fiduciary duty.  First, Power-One's certificate of incorporation exculpates the Directors from any liability for damages due to a breach of fiduciary duty, unless the AC adequately pleads that the Directors were disloyal or engaged in bad faith intentional misconduct.  *See* 8 Del. Code § 102(b)(7).  And the AC contains no such allegation.  Second, there was no breach of fiduciary duty.  In fact, the AC shows that the Directors (1) were not conflicted, because their interests were aligned with all of Power-One's stockholders; (2) conducted a thorough, deliberate and reasonable sale process; and (3) caused a Proxy to be mailed that fully advised stockholders of all relevant facts.

1.      The Breach of Fiduciary Duty Claims Are Barred

Under Delaware law corporate charters can exculpate directors from damages liability for breaches of fiduciary duty, except in the case of (1) a breach of the duty of loyalty; or (2) bad faith, intentional misconduct, or knowing violations of law.  8 Del. Code Ann. § 102(b)(7).  Power-One's charter includes such a clause.[15]  Under governing Delaware law, it must be vigilantly enforced.[16]

To overcome the Power-One exculpation provision, "the facts alleged in the Complaint must show that (1) a majority of the Board was not both disinterested and

---

[15]   It provides that:  "[t]o the fullest extent permitted by the Delaware General Corporation Law . . . a director of the Corporation shall not be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director."  Ex. G (Power-One Certificate of Incorporation) at 3.

[16]   *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 652 (Del. Ch. 2008) ("[T]his court must be vigilant in reviewing the complaint here to make sure that it pleads particularized facts . . . supporting an inference that the directors committed a breach of the fiduciary duty of loyalty.").  "To give the exculpatory charter provision any less substantial effect would be to strip away a large measure of the protection the [Delaware] General Assembly has accorded directors through its enactment of 8 Del. C. § 102(b)(7)."  *McMillan v. Intercargo Corp.*, 768 A.2d 492, 502 (Del. Ch. 2000).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750                                      - 15 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1    independent or (2) that the [Board] did not act in good faith." *In re BJ's Wholesale*

2    *Club, Inc.*, C.A. No. 6623-VCN, 2013 WL 396202, at \*6 (Del. Ch. Jan. 31, 2013)

3    (internal citations omitted).  As shown below, the AC fails to plead either.

4              2.    <u>No Breach of the Directors' Duty of Loyalty</u>

5              The AC alleges that the Directors suffered from conflicts of interest because

6    they owned stock options and other equity in Power-One that would be paid in the

7    Merger.  *See* AC ¶ 98.  In addition, the AC asserts a conflict on the part of Power-

8    One's CEO, Mr. Thompson, based on severance benefits in his pre-existing

9    employment agreement that likely would be triggered by the Merger.

10            Delaware courts, however, regularly conclude that these common facets of

11   corporate life do not raise any colorable claim of director conflict of interest.  *See,*

12   *e.g., In re BioClinica, Inc. S'holder Litig.*, No. 8272-VCG, 2013 WL 5631233 (Del.

13   Ch. Oct. 16, 2013).  As with this case, *BioClinica* was a post-closing damages action

14   challenging a merger.  The Delaware Chancery Court rejected as "frivolous"

15   allegations that directors had a conflict of interest because they held stock options

16   that would vest in the merger.  *Id.* at \*5; *see also id.* (because "stock ownership by

17   decision-makers aligns those decision-makers' interests with stockholder interests;

18   maximizing price[,] . . . [Delaware] Courts have . . . routinely held that an interest in

19   options vesting does not violate the duty of loyalty").  That the Directors here (as in

20   *BioClinica*) held options and equity in Power-One merely confirms that their

21   interests were *aligned* with other stockholders—they had a strong incentive to

22   maximize the value of Power-One's shares.[17]

23   _____

24          [17]   *BioClinica*, 2013 WL 5631233, at \*5; *In re Micromet, Inc. S'holders*
     *Litig.*, No. 7197-VCP, 2012 WL 681785, at \*13 n.64 (Del. Ch. Feb. 29, 2012)

25   (rejecting request to enjoin a merger where plaintiff alleged a conflict based on
     vesting of directors' stock options because "the directors' interests would be aligned

26   with the shareholders in seeking the highest price for their shares reasonably

27   available"); *Orman v. Cullman*, 794 A.2d 5, 27 n.56 (Del. Ch. 2002) ("[a] director
     who is also a shareholder of his corporation is more likely to have interests that are

28   aligned with the other shareholders of that corporation").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 16 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

The AC also alleges that Directors who held options were conflicted because they could roll them over into options to purchase ABB shares.  But again, this only shows that the Directors shared the same incentives as other stockholders.  Under Section 3.3 of the Merger Agreement, Ex. A at A-16, *anyone* who held Power-One options at the time of the Merger could choose to roll those options over to obtain ABB securities.  The number of shares and the exercise price of the rolled-over options would depend on the merger price—and the higher the merger price, the greater the number of shares and the lower the exercise price of the ABB options. *Id.* at A-8, A-16.  Therefore, *all* Power-One option-holders (like stockholders generally) were best served by a maximized merger price, allowing them more ABB shares at a lower price.  Again, this perfectly aligned the interests of Directors who held options with those of every other stockholder.[18]

Further, the AC's contention that the Silver Lake-affiliated Directors were conflicted does not make sense.  Silver Lake was Power-One's largest stockholder, so maximizing the merger price was in its best interest—just like any other stockholder.[19]  The AC appears to allege that Silver Lake had a conflict because it wanted to quickly sell its Power-One holdings.  AC ¶ 44.  But Delaware courts have rejected this "quick sale" theory, holding that only in "very narrow circumstances" involving well-pled facts showing "a crisis, fire sale" or a controlling shareholder with an "an exigent need" for cash, can a plaintiff allege that a large shareholder's interests conflicted with those of minority shareholders. *In re Synthes, Inc. S'holder Litig.*, 50 A.3d 1022, 1036 (Del. Ch. 2012); *see also In re Morton's Rest. Grp, Inc.*,

---

[18]   *See Globis Partners, L.P. v. Plumtree Software, Inc.*, No. 1577-VCP, 2007 WL 4292024, at *8-9 (Del. Ch. Nov. 30, 2007) (rejecting allegations that directors were conflicted in a merger based, in part, on the directors' ability to convert options into equity in the acquirer).

[19]   *In re Morton's Rest. Grp., Inc.*, 74 A.3d 656, 666-67 (Del. Ch. 2013) ("[T]he presumption is that a large blockholder, who decides to take the same price as everyone else, believes that the sale is attractive, and thus is a strong indication of fairness and that judicial deference is due.").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations
2985750
- 17 -
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

74 A.3d 656, 666-67 (Del. Ch. 2013).  The AC alleges no such "crisis" confronting Silver Lake; to the contrary, the AC concedes that the sale process was not rushed, and took almost two years.  AC ¶¶ 46-74.

Finally, the AC asserts that Mr. Thompson stood to receive additional benefits—in the form of potential change-in-control benefits under his pre-existing employment agreement—beyond what the ordinary stockholder would receive in the Merger.  *Id.* ¶¶ 94-95.  Under governing Delaware law, however, Mr. Thompson's employment agreement created no conflict of interest because it guaranteed compensation if he lost his job after a merger—*any* merger—and therefore gave Mr. Thompson no incentive to close the ABB Merger at an inadequate price, especially in light of his substantial equity in Power-One.[20]

In any event, the other eight Directors were indisputably independent.  As the AC acknowledges, they were neither officers nor employees of Power-One, and had no interests in or relationships with ABB or Verdi.  *See id.* ¶¶ 16-24.  Because the majority of the Board was independent, Mr. Crehan cannot maintain a claim based on a breach of the duty of loyalty.  *See, e.g.*, *Malpiede v. Townson*, 780 A.2d 1075, 1084-85 (Del. 2001) (holding that a board did not breach its duty of loyalty when a merger was approved by a majority of disinterested directors and only the CEO was potentially conflicted).

3.    No Allegation That the Directors Acted in Bad Faith

Under Delaware law, where a transaction involves a change of control—like the Merger here—a board must "try in good faith to 'seek the best value reasonably available to the stockholders.'"  *Binks v. DSL.NET, Inc.*, C.A. No. 2823-VCN, 2010

---

[20]    *See In re Novell, Inc. S'holder Litig.*, C.A. No. 6032-VCN, 2013 WL 322560, at *11 (Del. Ch. Jan. 3, 2013); *accord In re W. Nat. Corp. S'holders Litig.*, No. 15927, 2000 WL 710192 (Del. Ch. May 22, 2000) (the fact that a CEO would receive severance payments in a merger in accordance with a pre-existing employment agreement did not show that the CEO's interest conflicted with shareholders).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 18 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

WL 1713629, at **6-7, 9-10 (Del. Ch. Apr. 29, 2010) (quoting *Paramount Commc'ns, Inc. v. QVC Network, Inc.*, 637 A.2d 34, 48 (Del. 1994)).  To fulfill that duty, the board is charged with "us[ing] that amount of care which ordinarily careful and prudent men would use in similar circumstances [and to] 'consider all material information reasonably available' in making business decisions."  *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005) (quoting *Graham v. Allis-Chalmers Mfg. Co.*, 188 A.2d 125, 130 (Del. 1963)).  Accordingly, judicial review of a sale process "is not a license for law-trained courts to second-guess reasonable, but debatable, tactical choices that directors have made in good faith."  *In re Toys "R" Us, Inc. S'holder Litig.*, 877 A.2d 975, 1000 (Del. Ch. 2005).  And, because of the exculpation provision in Power-One's charter, Mr. Crehan's claim fails unless the AC pleads facts showing that, in bad faith, the Directors "knowingly and completely" failed to fulfill their duties.  *BioClinica*, 2013 WL 5631233, at *6 (Del. Ch. Oct. 16, 2013).  It does not.

a.  *The Directors Made A Reasonable Decision to Focus on Potential Buyers Who Were Most Likely to Bid*

The AC, and the Proxy it references, show the Board engaged in a lengthy, deliberate, and thorough sale process before approving the Merger.  As discussed above, the process began in 2011, and was discontinued after a downturn in the renewable energy market caused Power-One's share price to fall dramatically (34% over a few weeks).  The Board did not resume the sale process until the summer of 2012, when it began initiating discussions with potential buyers.  Only after months of negotiations, during which multiple offers and counteroffers were made, and after receiving from Goldman an opinion that ABB's "best and final" price was fair, did Power-One's Board approve the Merger Agreement.[21]

---

[21]  *See* Ex. A at 50-58, Annex B; *In re Alloy, Inc.*, C.A. No. 5626-VCP, 2011 WL 4863716, *10 (Del. Ch. Oct. 13, 2011) ("Receipt of a fairness opinion also supports an inference that a board satisfied its duty of care.").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 19 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1        Mr. Crehan nevertheless complains that the Board should have contacted

2   more buyers.  But nothing in the AC explains why the Board's decision to focus on

3   the buyers that were most likely to make an offer was an unreasonable choice, much

4   less one that was made in bad faith.  The Board had discussions with at least seven

5   potential buyers other than ABB in 2012, yet only ABB came forward with an offer.

6   Indeed, despite a *Financial Times* report in the fall of 2012 that Power-One was up

7   for sale, no other potential bidders emerged.  AC ¶ 58.  Given the extensive process

8   the Board engaged in over two years and the lack of interest from other bidders, it

9   was entirely reasonable for the Board to focus on ABB.  *See In re Dollar Thrifty*

10  *S'holder Litig.*, 14 A.3d 573, 605 (Del. Ch. 2010) (holding that a board acted

11  reasonably in "engaging . . . with the sole party that had made a serious expression

12  of interest").[22]

13       b.   *No Claim for "Inadequate Consideration"*

14       The AC also alleges that the price per share obtained in the Merger was

15  "inadequate," despite the 57% premium it represented to stockholders.  Under

16  Delaware law, however, Mr. Crehan's remedy for an "inadequate" price was to

17  pursue appraisal proceedings in Delaware court, *see* 8 Del. Code § 262**,** not a breach

18  of fiduciary duty claim in federal court.  "[S]hareholder complaints that the price

19  offered in a merger is inadequate are to be adjudicated in an appraisal proceeding

20  absent litigable claims of unfair dealing affecting price."  *Porter v. Tex. Commerce*

21  *Bancshares, Inc.*, C.A. No. 9114, 1989 WL 120358, at *1123 (Del. Ch. Oct. 12,

22  1989).  Mr. Crehan cannot now bypass the appraisal remedy by bringing appraisal-

23  type allegations of an unfair price in federal court.

24  _____

25      [22]  In conclusory fashion, the AC alleges that the Board was required to

26  conduct a "fulsome market check," AC ¶ 58, but Delaware law imposes no such
    requirement.  *See Barkan v. Amsted Indus., Inc.*, 567 A.2d 1279, 1287 (Del. 1989)

27  (because the board "possess[ed] a body of reliable evidence with which to evaluate
    the fairness of a transaction," the defendants could reasonably "approve that

28  transaction without conducting an active survey of the market.").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 20 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1    Independently, Mr. Crehan's "price" claim fails because, under settled

2    Delaware law, a stockholder is not entitled to a particular price; stockholders as a

3    whole vote on whether a merger price is adequate.  In such circumstances, no claim

4    is stated even if the merger price was *below* the market price.[23]  And here, Power-

5    One stockholders received a substantial *premium*.  Ex. A at 47 (57% premium).[24]

6        Moreover, 98% of the Power-One shares voted approved the Merger.  Ex. C.

7    Thus, the AC's allegations of an inadequate price not only fails as a legal matter, but

8    is not even plausible.  *Parnes v. Bally Entm't Corp.*, CIVA. 15192, 2001 WL

9    224774, at 14 n.38 (Del. Ch. Feb. 23, 2001) ("By voting to approve and ratify the

10   Merger, over 99% of . . . shareholders seem to have indicated that they . . . thought

11   [they] had received a fair price."), *aff'd*, 788 A.2d 131 (Del. 2001).  Those

12   stockholders had the benefit of an extensive analysis prepared by Goldman.  Ex. A

13   at 50-8, Annex B.  And the Directors were entitled to rely on Goldman's analyses

14   and opinion in discharging their fiduciary duty to stockholders.[25]

15       While the AC quibbles with parts of Goldman's analysis,[26] it notably does not

16   contend that the Proxy misstated *in any way* what Goldman did and why, or the

17   ———————————————

18   **23**   *See, e.g., In re CompuCom, Sys. Stockholders Litig.*, C.A. No. 499-N, 2005
     WL 2481325, at *7 (Del. Ch. Sept. 29, 2005) (rejecting a claim that the duty of care
19   was breached because the offer price per share was below market price on the date
     of sale).

20   **24**   *See, e.g., In re Micromet,* 2012 WL 681785, at *4, *13 ("a 37% premium
21   to the one month weighted average stock price" represented a "substantial" and
     "significant" premium); *In re Smurfit-Stone Container Corp. S'holder Litig.*, C.A.
22   No. 6164-VCP, 2011 WL 2028076, at *8 (Del. Ch. May 20, 2011) (approving
     transaction with a 27% premium); *In re Vitalink Commc'n Corp. S'holders Litig.*,
23   C.A. No. 12085, 1991 WL 238816 at *1333 (Del. Ch. Nov. 8, 1991) (holding that
24   board's decision to accept a 23.5% premium over stock price was reasonable).

25   **25**   *See, e.g., In re MONY Grp. Inc. S'holder Litig.*, 852 A.2d 9, 25 (Del. Ch.
26   2004) *judgment entered sub nom. In re The MONY Grp. Inc. S'holder Litig.*, 20554-
     NC, 2004 WL 5389603 (Del. Ch. Mar. 1, 2004).

27   **26**   That criticism is, in any event, decidedly wrong.  The AC inaccurately
28   presents two of the four financial analyses Goldman performed.  AC ¶ 81-82.  It is
     simply false that Goldman's analyses "indicate that the $6.35 [price per share] . . .

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations
2985750

- 21 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1   conclusion Goldman reached.  Thus, Power-One stockholders were fully and

2   adequately informed of Goldman's opinion, and the basis for it.  If any Power-One

3   stockholder (like, allegedly, Mr. Crehan) was not persuaded that the price was fair,

4   he had remedies under Delaware law, like appraisal.  The belief that Goldman

5   should have reached a different conclusion, however, does not state a cause of

6   action.  *Solomon v. Pathe Commc'ns Corp.*, CIV. A. 12563, 1995 WL 250374 (Del.

7   Ch. Apr. 21, 1995) ("So long as a free choice to accept or reject a tender offer is

8   present, courts do not attempt to protect any right to receive a 'fair price' in a tender

9   offer."), *aff'd*, 672 A.2d 35 (Del. 1996).

10          c.      *"Deal Protection" Terms Are Common and Unobjectionable*

11          The AC describes a handful of the Merger Agreement's terms, so-called "deal

12   protection measures," as "unreasonably preclusive."  AC ¶¶ 99-100.  These

13   unremarkable terms are entirely appropriate under Delaware law and the Directors'

14   decision to agree to these terms cannot possibly give rise to an actionable claim for

15   breach of fiduciary duty, particularly in view of the exculpatory clause in the

16   corporate charter.

17

---

18   seriously undervalues the Company's true worth."  AC ¶ 83.  Goldman's
19   Discounted Cash Flow analysis—which estimates a *range* of fair prices for Power-
     One shares based on the company's predicted future performance, contains
20   assumptions about future market conditions, and includes proprietary pricing
21   models—resulted in an estimated value range of $6.14 to $8.26 for Power-One
     shares.  Ex. A at 54-55.  The Merger price of $6.35 is within that range.  And
22   Goldman's Public Trading Multiples analysis—which compares the value of Power-
23   One to the values of similar companies—does not come close to implying that
     Power-One's share price should have been $7.60 or $7.31, as the AC suggests.  AC
24   ¶ 82.  Rather, it shows that Power-One's implied value at the $6.35 merger price
25   (expressed as a multiple of EBITDA) was *higher* than the two most comparable
     companies.  Ex. A at 52-53.
26          Moreover, the AC also fails to mention the other financial analyses Goldman
27   performed, which show that the $6.35 merger price is comfortably within the range
     of fair prices, and that Goldman's ultimate opinion was that the merger price "is fair
28   from a financial point of view to [stockholders]."  Ex. A at 52-55, B-3.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750                                - 22 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1   **No Solicitation.**  The no-solicitation provision is a "standard measure" that

2   prohibits a selling entity from actively soliciting bids (but permits it to receive and

3   consider unsolicited bids) after signing a merger agreement.  *See In re IXC*

4   *Commnc'ns*, No. C.A. 17324, C.A. 17334, 1999 WL 1009174, at *2, *6 (Del. Ch.

5   Oct. 27, 1999) (upholding a no solicitation provision as ordinary); *McMillan v.*

6   *Intercargo Corp.*, 768 A.2d 492, 506 (Del. Ch. 2000) ("The presence of [a standard

7   such] provision in a merger agreement is hardly indicative of a . . . breach.").  These

8   provisions provide assurance to a potential buyer that it is not "being used merely to

9   draw others into a bidding war," and buyers will not bid their strongest offer without

10  such assurance.  *In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 502 (Del. Ch. 2010).

11  Thus, such clauses *benefit* stockholders by inducing bidders to provide their

12  strongest offer.

13  **Matching Rights.**  A matching-rights provision allows the buyer the option

14  to match or exceed a superior offer, if one is made—and there was none made here.

15  These provisions are "hardly novel," *In re Lear Corp. S'holder Litig.*, 926 A.2d 94,

16  120 (Del. Ch. 2007) and are both "reasonable" and have been "repeatedly upheld."

17  *In re Cogent*, 7 A.3d at 502 ("[I]t is reasonable for a seller to provide a buyer some

18  level of assurance that he will be given adequate opportunity to buy the seller, even

19  if a higher bid later emerges."); *In re 3Com S'holders Litig.*, C.A. No. 5067-CC,

20  2009 WL 5173804, at *7 (Del. Ch. Dec. 18, 2009) ("repeatedly upheld").

21  **Fiduciary Out.**  A "fiduciary out" provision protects stockholders by

22  allowing a board to withdraw its recommendation of a transaction in order to pursue

23  a superior offer.  *See In re Cogent*, 7 A.3d at 502.  The AC complains that the

24  "fiduciary out" provision in the Merger Agreement is "highly restrictive," AC

25  ¶ 100(b), but alleges no facts to explain, much less demonstrate, why.[27]

26  _____

27  [27]  The closest it comes is alleging that the definition of "Superior Proposal,"

28  which would allow the Board to invoke the fiduciary out, is overly restrictive
     because it requires a competing bidder to acquire at least 90% of the assets or shares

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750                                    - 23 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

**Termination Fee.**  Termination fees compensate prospective purchasers who enter into merger agreements but are subsequently outbid, thereby encouraging buyers to make their best offers without fear of being used as a stalking horse.  Here, the $20 million termination fee represents less than 2% of the Merger's $1.028 billion transaction value.  *See* AC ¶¶ 1, 8.  Delaware courts consistently approve termination fees that are *double* that amount.[28]

**In sum.**  The AC has pleaded no facts showing that the Merger Agreement's terms—singly or together—were anything but standard; Delaware courts routinely reject similar allegations.  *See, e.g.*, *In re Answers Corp. S'holders, Litig.*, C.A. No. 6170-VCN, 2011 WL 1366780, at *4 & n.47 (Del. Ch. Apr. 11, 2011) (rejecting breach-of-duty claims based on combination of 4.4% termination fee, a no-solicitation clause, and a matching-rights provision).  Accordingly, there is no plausible claim against the Directors for approving the Merger Agreement.

---

of Power-One.  AC ¶ 100(e).  But ABB agreed to acquire *100%* of Power-One shares, and it can hardly be unreasonable (much less bad faith) for the Board to agree that a competing bidder must offer to acquire at least 90% for its bid to be considered "superior."  Indeed, the "Superior Proposal" provision protected stockholders from a coercive, competing bid in which the bidder offers to purchase fewer shares at the final price, only to squeeze out the remainder at a lower price.  *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 956 (Del. 1985) (describing coercive effect of buyer's offer to buy only enough stock to effectuate merger).

[28]  *See e.g.*, *In re Answers Corp. S'holders Litig.*, C.A. No. 6170-VCN, 2012 WL 1253072, *8 n.50 (Del. Ch. Apr. 11, 2012) (rejecting a challenge to a 4.4% termination fee); *In re MONY Grp.*, 852 A.2d at 24 (termination fee representing "only 3.3%" of total equity value and "only 2.4%" of the total transaction value "is well within the range of reasonableness"); *In re Pennaco Energy, Inc. S'holders Litig.*, 787 A.2d 691, 707 (Del. Ch. 2001) (3% termination fee "modest" and "reasonable"); *McMillan*, 768 A.2d at 505 ("it is difficult to see how a 3.5% fee would have deterred a rival bidder who wished to pay materially more" for company).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 24 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

4.     The Disclosure Claims Are Meritless

Finally, the AC fails to state a claim that the Board omitted any material information from the nearly 200-page Proxy.[29]  The AC alleges that the Proxy did not disclose (1) whether Power-One's non-disclosure and standstill agreements with certain potential buyers contained "Don't Ask, Don't Waive" provisions; and (2) details about alleged discussions regarding ABB retaining members of Power-One's management.  AC ¶¶ 103-104.  These allegations are, respectively, wrong and irrelevant; all material information was disclosed.

Non-disclosure claims under Delaware law require a plaintiff to "allege that facts are missing from the proxy statement, identify those facts, state why they meet the materiality standard and how the omission caused injury." *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 141 (Del. 1997).  An omitted fact is material only if there is "a substantial likelihood that the undisclosed information would significantly alter the total mix of information already provided." *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1174 (Del. 2000).  A fact that is "merely helpful or cumulative" need not be disclosed. *In re OPENLANE, Inc. S'holder Litig.*, No. 6849–VCN, 2011 WL 4599662, at *13 (Del. Ch. Sep. 30, 2011) (internal quotations omitted).

Here, the Proxy brimmed with information, permitting stockholders to make informed votes, including (1) extensive discussions about the background of the sale process and negotiations leading to the merger, Ex. A at 35-45; (2) the Board's reasons for recommending that stockholders vote to approve the Merger and projections for Power-One's future performance, *id.* at 45-49; (3) Goldman's

---

[29]  The exculpatory provision in Power-One's charter applies equally to preclude breach of fiduciary duty claims based on non-disclosure. *See Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1287 (Del. 1994) ("[C]laims alleging disclosure violations that do not otherwise fall within any exception" barred by 102(b)(7) provision); *see also Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1163 n.11 (Del. 1995).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 25 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

opinion and the basis for it, *id.* at 50-57, 94; (4) the details of the options and equity awards held by each executive officer and director, and the value of those options and awards if the Merger was approved, *id.* at 60-62; and (5) the severance payments executive officers might receive after the Merger. *Id.* at 63-65.

The AC alleges two—*and only two*—criticisms of the Proxy. AC ¶¶ 103-04. First, the AC complains that the Proxy did not disclose whether Power-One's non-disclosure and standstill agreements with other potential buyers contained "Don't Ask, Don't Waive" provisions. AC ¶ 103. But it did:

> [E]ach of the non-disclosure and standstill agreements with Potential Buyer 2, Potential Buyer 3 and Potential Buyer 8 . . . included a term prohibiting the counterparty from asking Power-One to waive the standstill provision in the agreement (such provision, often referred to as a 'don't ask, don't waive' provision). . . . None of the other non-disclosure agreements contained such a "don't ask, don't waive" provision.

Ex. A at 37. The Proxy also disclosed that Power-One notified each of these counterparties that it waived the "don't ask, don't waive" provision, and "would not seek to enforce it." *Id.*

Second, the AC alleges that the Proxy omits "whether and when discussions took place regarding ABB retaining members of [Power-One] management" following the Merger. AC ¶ 104. But the Proxy *explicitly discloses* that, notwithstanding the fact that "it [was] generally anticipated that a number of our executive officers will remain after the merger is completed", "none of [Power-One's] executive officers has entered into any agreement, arrangement or understanding with ABB or its affiliates regarding employment with . . . ABB or the surviving company." Ex. A at 65. The AC fails to explain—as required to state a claim—why speculation about future employment would be material when the Proxy squarely discloses there were *no* such employment agreements. *See Globis Partners, L.P. v. Plumtree Software, Inc.*, No. 1577-VCP, 2007 WL 4292024, at *14

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 26 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

(Del. Ch. Nov. 30, 2007) (quoting *Skeen*, 1999 WL 803974, at *23) (proxy need not disclose a "play-by-play description of merger negotiations").  Indeed, the AC does not identify a single executive who was retained after the Merger closed, much less show how that executive's retention implies any sort of conflict of interest.

### B.  Plaintiff Fails to Plead that Power-One and Verdi Aided and Abetted Any Breach of Fiduciary Duty

The AC also fails to state any claim for aiding and abetting breach of fiduciary duty, the elements of which are: (1) a fiduciary relationship, (2) a breach of fiduciary duty, (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach.  *Malpiede*, 780 A.2d at 1096.  The AC's failure to state a claim for breach of fiduciary duty against any Director Defendant is thus fatal to Mr. Crehan's claims for secondary liability.[30]

In addition, the AC fails to plausibly allege that Power-One or Verdi "knowingly participated" in any breach of fiduciary duty.  *Malpiede*, 780 A.2d at 1096.  There is "knowing participation" in a fiduciary breach "where 'the bidder attempts to create or exploit conflicts of interest in the board,' but not from 'a bidder's attempts to reduce the sale price through arm's length negotiations.'"  *BioClinica,* 2013 WL 5631233 at * 11 (quoting *Malpiede*, 780 A.2d at 1097).

As a preliminary matter, Power-One could not, as a matter of law, have abetted its own Board's conduct, because a corporation cannot act other than as directed by its officers or directors.  Thus, there is no independent action, much less

---

[30]  *Related Westpac LLC v. Jer Snowmass LLC*, No. 5001, 2010 WL 2929708, at *8 (Del. Ch. July 23, 2010) ("Because no cognizable breach of fiduciary duty claim is stated, the aiding and abetting claim also fails.") (internal quotation marks and citation omitted); *see also MJT Securities, LLC v. Toronto-Dominion Bank*, No. C 03-3815 CW, 2007 WL 1725421 at *8 (N.D. Cal. 2007) ("Because there is no underlying breach of fiduciary duty, MJT's aiding and abetting claim fails as a matter of law.").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations
2985750

- 27 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

a tort, by reason of determinations made by Power-One's Board (*i.e.*, entering into the Merger Agreement) being carried out in the name of Power-One.[31]

As for Verdi, the AC alleges *only* that Verdi "w[as] fully aware of the breach of fiduciary duties being undertaken by the Director Defendants" and was "created to be the instrument of malfeasance." AC ¶¶ 124-25. *Iqbal* requires the Court to disregard such "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Telesaurus*, 623 F.3d at 1003 (citation omitted). After doing so, there is nothing left to the aiding and abetting claim against Verdi. At bottom, the AC fails to allege a single fact to show how Verdi had knowledge of or participated in any alleged breach of fiduciary duty.

To the contrary, the AC affirmatively pleads that no such claim could exist. It concedes that Verdi was "formed solely for the purpose of entering into the Merger Agreement and effectuating the [Merger]," AC ¶ 26, and fails to allege that Verdi had anything to do with the negotiations that led to the Merger Agreement, much less any knowledge of the strategic evaluation and sale process run by Power-One's Board. In fact, Verdi was only incorporated on April 12, 2003—nine days before the Merger Agreement was signed. Ex. H (Verdi Certificate of Incorporation). The AC pleads nothing that Verdi did in those nine days that plausibly suggests that it "knowingly participated" in a breach of fiduciary duty. To the contrary, the terms of the Merger Agreement challenged by the AC have been repeatedly approved by

---

**31** *See Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, CIV.A. 19890-NC, 2005 WL 578972 (Del. Ch. Mar. 3, 2005) (holding that a corporation generally cannot be deemed to have conspired with its officers and agents); *Cornell Glasgow, LLC v. La Grange Props., LLC*, C.A. No. N11C-05-016 JRS CCLD, 2012 WL 2106945 at *11 (Del. Sup. Jun. 6, 2012) ("[L]ike civil conspiracy, officers and agents cannot aid and abet their principal or each other in the commission of a tort"); *see also Reno v. Baird*, 957 P.2d 1333, 1342 (Cal. 1998) (rejecting aiding and abetting claims, noting "[t]he concept of aiding and abetting involves two separate persons, one helping the other. Here we deal with individual employees of a corporate employer. A corporation can act only through its individual employees.").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750                                                                - 28 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

Delaware courts. *See supra,* Section II.A.3.c. And, to "allow a plaintiff to state an aiding and abetting claim against a bidder simply by making a cursory allegation that the bidder got too good a deal is fundamentally inconsistent with the market principles with which our corporate law is designed to operate in tandem." *Morgan v. Cash*, C.A. No. 5053-VCS, 2010 WL 2803746, at *8 (Del. Ch. July 16, 2010).[32]

Nor does Mr. Crehan's criticism of the Merger price—a price found sufficient by 98% of the Power-One shares voted at the special meeting—state a fiduciary duty breach, much less an aiding and abetting claim. ABB offered a 57% premium. Even if the offer price were far lower, that would not suffice to state an aiding and abetting claim: "it should be obvious that an offeror may attempt to obtain the lowest possible price through arms-length negotiations." *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 735 (Del. Ch. 1999) (internal quotations omitted) (dismissing aiding and abetting claim); *In re BJ's*, 2013 WL 396202, at *15 ("[H]ard bargaining . . . does not constitute knowing participation in a fiduciary breach.").

Finally, courts have "consistently held that evidence of arm's-length negotiation with fiduciaries negates a claim of aiding and abetting" because it *precludes* a showing that the defendants knowingly participated in any breach by the fiduciaries.[33] Here, the sale process described in the AC—which took nearly two full years—bears all of the hallmarks of an arm's-length negotiation.

---

[32]   *Rand v. W. Airlines, Inc.*, C.A. No. 8632, 1989 WL 104933, at *1139 (Del. Ch. Sep. 11, 1989) (fact that buyer "requested and obtained" allegedly excessive lock-up and no-shop provisions "does not, without more, give rise to an inference that [the buyer] was aware of any wrongful conduct by [the target company] or its directors").

[33]   *See In re Frederick's of Hollywood, Inc. S'holders Litig.,* C.A. No. 15944, 1998 WL 398244, at *3 n.8 (Del. Ch. July 9, 1998); *In re General Motors (Hughes) S'holder Litig.*, No. Civ.A. 20269, 2005 WL 1089021 at *26 (Del. Ch. Mar. 24, 2009); *Malpiede*, 780 A.2d at 1097 ("A bidder's attempts to reduce the sale price through arm's-length negotiations cannot give rise to liability for aiding and abetting[.]").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2985750

- 29 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS

1

**CONCLUSION**

2      For the foregoing reasons, the Court should dismiss the AC without leave to

3  amend.

4

5  Dated:  March 3, 2014                        IRELL & MANELLA LLP
                                                Craig Varnen
6

7                                               CLEARY GOTTLIEB STEEN &
                                                HAMILTON LLP
8                                               Mitchell A. Lowenthal
                                                (admitted *pro hac vice*)
9

10                                              By:   /s/ Craig Varnen

11                                                   Craig Varnen

12                                              *Attorneys for Defendants
                                                Power-One, Inc. and Verdi Acquisition*
13                                              *Corporation*

14

15  Dated:  March 3, 2014                       O'MELVENY & MYERS LLP
                                                Seth Aronson
16                                              Matthew W. Close

17

18                                              By:   /s/ Matthew W. Close

19                                                   Matthew W. Close

20                                              *Attorneys for Defendants Richard J.
                                                Thompson, John Gacek, Kambiz*
21                                              *Hooshmand, Hartmut Liebel, Mark
                                                Melliar-Smith, Kyle Ryland, Ajay Shah,*
22                                              *Richard M. Swanson, and Jay Walters*

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

2985750

- 30 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS